Argued and submitted December 8, 1981, peremtory writ issued June 30, 1982

STATE ex rel RUSSELL,
*Plaintiff-Relator,*

*v.*

JONES,
*Defendant.*

(SC 28198)

647 P2d 904

Lawrence Baron, Metropolitan Public Defender, Portland, argued the cause for plaintiff-relator. With him on the brief were Gail Baron, Christopher Cournoyer, Mark Kramer, and Kenneth Lerner, Metropolitan Public Defenders, Portland.

James E. Mountain, Jr., Deputy Solicitor General, Salem, argued the cause for defendant. With him on the brief were David B. Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

TANZER, J.

Lent, J., filed a concurring opinion in which Linde, J., joined.

Peterson, J., filed a dissenting opinion.

Campbell, J., filed a dissenting opinion.

---

\* 

## TANZER, J.

This is a proceeding in mandamus. We take the facts from the alternative writ and supporting documents. Plaintiff is the defendant in an underlying criminal prosecution. (Hereafter he is referred to as "defendant.") He entered a no contest plea to a felony charge of sexual abuse in the first degree. Apparently a presentence investigation was ordered to be performed by the Multnomah County Diagnostic Center. That agency requested the defendant to appear for interviews, including a psychological interview, but refused as a matter of practice to permit the defendant's attorney to attend the interviews. Defendant then moved to allow his attorney to attend the interviews. The motion was denied by the circuit judge, the successor of whom is defendant in this proceeding. The court stated its reasoning:

> "I recall very well, Mr. Baron [defense counsel], that I accepted the plea of no contest with reluctance, and only after the importuning of yourself regarding the unique circumstances of this crime and your client's attitude towards the criminal justice system. The thrust of your argument is not so much to urge the necessity of legal counsel as a legal advisor but that this man needs someone with whom he trusts and would feel more comfortable and ask that you be there. You have not made any argument, at least convincing me, that your legal services are necessary."

The trial court concluded that because there was no need for legal services, due process did not require the presence of counsel. The writ would require that the order of denial be vacated and that the trial court allow defense counsel to be present at presentence interviews.

Defendant asserts three constitutional bases for a right to the presence of his attorney at the presentence investigation interviews. His first contention is under the right to counsel provisions of Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Second, he asserts a right to the presence of counsel as ancillary to his right not to be compelled to testify against himself in any criminal prosecution, rights guaranteed under Article I, section 12, of the Oregon Constitution, and under the Fifth Amendment to

the United States Constitution. His third contention is that, under the circumstances of this case, "fundamental fairness," as embodied by the Due Process Clause of the Fourteenth Amendment, mandates the presence of his attorney to insure his right to a fair trial. Finally, the defendant contends that the trial court abused its discretion in denying the defendant's motion to have counsel present at the presentence interview. We issued the alternative writ of mandamus to consider whether criminal defendants have a right to have counsel attend the presentence interviews.

Article I, section 11, states that the accused shall have the right "to be heard by himself and counsel" in "all criminal prosecutions." The term "criminal prosecution" includes sentencing, a stage at which a judicial decision affecting a defendant's future liberty is made. Obviously, then, a defendant is entitled "to be heard by himself and counsel" at sentencing. A short answer, therefore, is that counsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be "heard," including the sentencing stage, whether this is wholly performed by the judge or shared with non-judicial persons.

Beyond this short answer, we have the benefit of decisions of the United States Supreme Court under the Sixth Amendment, which, as is demonstrated by the excellent historical review in the dissent, was intended to assure similar protection to that stated in Article I, section 11. Under those decision, insofar as they affect this case, a criminal defendant's guarantee of the assistance of counsel exists at least at all court proceedings from arraignment through probation revocation as well as all post-indictment out-of-court critical stages where, without the assistance of counsel, the legal interests of the defendant might be prejudiced. Specifically, sentencing is a critical stage of a criminal prosecution at which a defendant is guaranteed counsel. *Mempa v. Rhay,* 389 US 128, 88 S Ct 254, 19 L Ed 2d 336 (1967); *Gebhart v. Gladden,* 243 Or 145, 412 P2d 29 (1966). We agree with the dissenters as to the nature of those principles, but our application of them differs from that of the dissent because of our different view of the nature of a presentence investigation, to which we now turn.

Before pronouncing sentence, a trial court will wish to be informed of such relevant information as the circumstances of the offense and the criminal record, social history and present condition and environment of the defendant. Before presentence reports were common, this information was generally provided at the sentencing hearing by the prosecutor, the defendant, defense counsel and other sources. Today, ORS 137.530 provides an alternative method of gathering such information. Instead of the court doing so directly, it may direct probation officers to perform the initial task on behalf of the court, and to report back to the court:

> "Probation officers, when directed by the court, shall fully investigate and report to the court in writing on the circumstances of the offense, criminal record, social history and present condition and environment of any defendant; and unless the court directs otherwise in individual cases, no defendant shall be placed on probation until the report of such investigation has been presented to and considered by the court. Whenever desirable, and facilities exist therefor, such investigation shall include physical and mental examinations of such defendants." ORS 137.530.

The court may also designate a person other than a probation officer to conduct the investigation. ORS 137.090.

Defendant alleges that the presentence investigator, the diagnostic center, "told [him] to report for a psychological interview" as well as for a "general interview." Defendant does not dispute that the authority of the court to designate one other than a probation officer to make a presentence investigation, ORS 137.090, includes authority to designate the diagnostic center and that an interviewer may be a psychologist as well as anyone else.

A judge's election to gather sentencing information through the agency of a probation officer or another makes the process no less a judicial procedure than when the judge does so directly. The investigation is simply an out-of-court inquiry and hearing on behalf of the judge. When the information has been gathered for the judge, the information in the report may be challenged and supplemented at the sentencing hearing. The information in the presentence report, other than certain diagnostic or confidential

reports, may be disclosed to the state and the defendant, ORS 137.079, *see also, Buchea v. Sullivan,* 262 Or 222, 497 P2d 1169 (1972), and either party may complete the fact-gathering by offering evidence in aggravation or mitigation, ORS 137.080-137.100.[1] In other words, the investigator informally performs for the judge a function, in part, which would otherwise be performed by the judge as part of the formal sentencing hearing. Functionally, the investigation is a part of the sentencing procedure.

■ ■ A defendant is entitled to the assistance of counsel to the same degree when the judge seeks sentencing information from him in open court and when the judge does so indirectly through the out-of-court agency of a probation officer. Therefore we conclude that just as a sentencing hearing to determine a defendant's future liberty is a stage of a prosecution at which the assistance of counsel cannot be denied, so is a presentence interview. The order barring counsel was unauthorized.

We do not suggest that every defense attorney is duty bound to accompany his or her client at the probation office. Often, little purpose would be served by the presence of counsel at a presentence interview and a conscientious

---

[1] ORS 137.080:

"After a plea or verdict of guilty, or after a verdict against the defendant on a plea of former conviction or acquittal, in a case where a discretion is conferred upon the court as to the extent of the punishment to be inflicted, the court, upon the suggestion of either party that there are circumstances which may be properly considered in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

ORS 137.090:

"The circumstances which are alleged to justify aggravation or mitigation of the punishment shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken out of court at such time and place, and upon such notice to the adverse party, and before such person authorized to take depositions, as the court directs. The court may consider the report of presentence investigation conducted by probation officers pursuant to ORS 137.530 or any other person designated by the court."

ORS 137.100:

"If the defendant consents thereto, he may be examined as a witness in relation to the circumstances which are alleged to justify aggravation or mitigation of the punishment; but if he gives his testimony at his own request, then he must submit to be examined generally by the adverse party."

defense attorney would not necessarily feel obliged to attend to protect his client's interests. After guilt is no longer in issue, the inquiry is into defendant's background, present situation and attitude. At the hearing, the report of information given by the defendant is subject to disclosure and defense counsel can make objections and present evidence and additional statements by defendant. Given these procedural opportunities, rarely would there be risk of irremediable harm from the absence of counsel at the presentence interview. Yet, circumstances are conceivable where the presence of counsel would be helpful. We do not hold that the presence of counsel is required at every presentence interview or that his absence would constitute ineffective assistance of counsel. Rather, we hold only that Article I, section 11, and the Sixth Amendment require that counsel may not be barred from attendance at a presentence interview.

Defendant's contentions under the self-incrimination provisions of Article I, section 12, and the Fifth Amendment, if material at all, are premature. Other than ORS 137.100, discussed below, we find no legal authority for a judge or probation officer to compel an unwilling defendant to make statements in the course of the sentencing process, whether in or out of court. Nor may he be compelled to submit to psychological interviews. No issue of compelled self-incrimination arises because there is no statutory or other authority to compel defendant to provide any information, regardless of whether it is incriminatory.[2]

If a defendant offers himself or is called as a witness in mitigation or aggravation pursuant to ORS 137.100, see n 1, he would then be subject to compulsion to testify generally and a question of compelled self-incrimination might arise. At that time some issue of the post-conviction scope of the privilege would be presented, but this case presents no such issue.

The decisive factor in any presentence setting is not the official capacity or profession of the presentence

---

[2] A presentence investigation differs in this respect from a compulsory psychiatric examination under ORS 161.315 for evidence of mental disease or defect. *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968), and its progeny have no application to this case.

investigator or the setting in which the inquiry is made, but rather the willingness of the defendant to provide information. A defendant with counsel may be expected to know that a purpose of a presentence investigation is to assist the court in determining whether a convicted defendant is more likely to respond to probation or incarceration and to what extent. *State v. Scott,* 237 Or 390, 399-400, 390 P2d 328 (1968). Indeed, ORS 137.530, although it allows exceptions, directs that "no defendant shall be placed on probation" until a presentence report is considered. Thus, the decision whether to cooperate by providing the court with desired information is likely to be motivated by knowledge of the practical consequences: if one wishes leniency, he is likely to cooperate in the presentence investigation. If a defendant declines to cooperate, or if his attorney injects himself in a way which reduces the effectiveness of the inquiry or examination, then the defendant subjects himself to sentencing based on less complete information and the direction of ORS 137.530 becomes applicable. With the assistance of counsel, a defendant can decide advisedly and voluntarily whether it is in his best interests to submit to interviews and examinations and, if so, whether with or without his attorney in attendance.

In this case, for example, if defendant declines to cooperate or if the defendant's attorney attends and his service interferes with the ability of the psychologist to conduct an effective, complete psychological examination, then the judge may be required to impose sentence upon a noncooperative defendant based on the other information before the court which, according to the petition, is:

> "Plaintiff-Relator entered his plea of no contest because of psychological factors: the circumstances of this case involve sexual contact with two young girls, and an evaluation by a court-appointed psychologist—Dr. Howard Dewey—disclosed that it would be too psychologically traumatic for plaintiff-relator to have to plead guilty or face trial. Dr. Dewey considered and noted that plaintiff-relator had twice before been diagnosed by Dammasch State Hospital as suffering from schizophrenia—paranoid type."

In such cases as this, defendants and defense counsel are not likely to find it in their self-interest to impede the

process. Were that counsel's intention, he would more discreetly advise his client not to submit to examination at all. For these reasons, we expect the practical effects of our holding to be negligible in most cases, but helpful to the fact-gathering process or to the protection of the clients' rights in the exceptional cases where defense attorneys deem it advisable to attend presentence investigations or to witness psychological examinations.

It is hard to anticipate why a defense attorney would wish to attend a presentence interview or examination or what professional service he could perform if present. *Cf., United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967). Here, consistent with the trial judge's observations, the petition alleges a need for the attorney to provide what is essentially moral support rather than legal service. Nevertheless, we hold that counsel cannot be barred and the trial court had no authority to do so.

Peremptory writ issued.

**LENT, J.,** concurring.

I concur in the result. I concur in the opinion of the court by Justice Tanzer that Article I, section 11, of the Oregon Constitution precludes the trial judge from barring attendance of this defendant's counsel at the presentence interview.[1] I see no reason to rest our decision upon the Sixth Amendment to the United States Constitution; therefore, I do not join in that part of Justice Tanzer's opinion.

The Sixth Amendment is not by its terms applicable to the states. It is applicable only so far as its protection is necessary under the Fourteenth Amendment to the United States Constitution to ensure that a defendant not be deprived by the state of his "life, liberty, or property, without due process of law." This defendant asserts that he has a right to have counsel present by reason of the terms of the Oregon Constitution. The majority of this court agrees and will enforce that right. Where, therefore, can

---

[1] Because I conclude that the defendant must prevail under Article I, section 11, of the Oregon Constitution, I would not consider it necessary to reach his claims concerning self-incrimination, fundamental fairness and abuse of discretion.

there be any cognizable claim that the state is depriving him of life, liberty or property without due process? That claim has become irrelevant because the state is affording him due process under state law. There is no need, in either logic or law, to reach his Sixth Amendment contention.

For this reason, also, the dissent's argument that the presentence interview is not a "critical stage" in the criminal prosecution does not affect the result. That phrase refers only to the court's discussion of the federal Sixth Amendment precedents. The right of an accused under Article I, section 11, to be heard by himself or counsel, on which the court's decision rests, is guaranteed in "all criminal prosecutions," not limited to "critical stages" of such prosecutions.

Linde, J., joins in this opinion.

**PETERSON, J.,** dissenting.

A majority of this court holds that Article I, section 11, of the Oregon Constitution guarantees that defense counsel cannot be barred from attendance at a presentence interview and a plurality would reach the same result under the Sixth Amendment to the United States Constitution. I disagree with both conclusions.

The majority holds that the presentence investigation "is a part of the sentencing procedure," and that "just as a sentencing hearing to determine a defendant's future liberty is a stage of a prosecution at which the assistance of counsel cannot be denied, so is a presentence interview." 293 Or at 317. The presentence interview may be the functional equivalent of a portion of the information-gathering process formerly conducted by the court during the sentencing hearing itself. However, a distinction should be drawn between the presentence interview and the sentencing hearing for purposes of extending to the defendant the right to have a lawyer present.

*Gebhart v. Gladden,* 243 Or 145, 148-149, 412 P2d 29 (1966), describes the rationale underlying the right to counsel at a sentencing hearing as follows (quoting from *Martin v. United States,* 182 F2d 225 (5th Cir 1950):

" ' "The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's

counsel at that time *necessary* if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendants' [sic] past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation, or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial." ' " (Emphasis added.)

As will be seen below, the reasons why assistance of counsel is required at sentencing do not exist at the presentence interview. The majority opinion never expresses any satisfactory reason why it is *necessary* that an attorney be present. On the contrary, the majority finds it "hard to anticipate why a defense attorney would wish to attend" (other than for "moral support" in this case) (293 Or at 320), states that "[o]ften, little purpose would be served by the presence of counsel at a presentence interview" (293 Or at 317), and merely concludes that "circumstances are conceivable where the presence of counsel would be helpful" (293 Or at 318).

For centuries, the central concept of punishment was retributive: an eye-for-an-eye and a tooth-for-a-tooth. But as early as 1859, Article I, section 15, of the Oregon Constitution provided that "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice." The 19th century saw the beginnings of individualized sentencing, and the 20th century has seen the advent of an enlightened diagnostic process popularly referred to as the presentence investigation.

The first Oregon statute providing for presentence reports was passed in 1931, Or Laws ch 396, section 2, now ORS 137.530. Present Oregon statutes concerning presentence reports, their preparation and use, are found in ORS

chapters 137 and 144. ORS 144.790 requires the Corrections Division to furnish a presentence report to the sentencing court whenever any person is convicted of a felony. The statute requires that the reports "* * * contain recommendations with respect to the sentencing of the defendant, including incarceration or alternatives to incarceration whenever the Corrections Division officer preparing the report believes such an alternative to be appropriate. All recommendations shall be for the information of the court and shall not limit the sentencing authority of the court."

ORS 137.079 requires that copies of the report and all other written information considered by the court in imposing sentence be made available to the district attorney and the defendant or his counsel a reasonable time prior to sentencing. ORS 137.530 provides:

> "Probation officers, when directed by the court, shall fully investigate and report to the court in writing on the circumstances of the offense, criminal record, social history and present condition and environment of any defendant; and unless the court directs otherwise in individual cases, no defendant shall be placed on probation until the report of such investigation has been presented to and considered by the court. Whenever desirable, and facilities exist therefor, such investigation shall include physical and mental examinations of such defendants."

ORS 137.077 specifically provides that the presentence report is not a public record and shall be available only to the sentencing court, the Corrections Division and related agencies, appellate or review courts, the district attorney and the defendant or the defendant's counsel. Although a presentence report is required in all felony cases (unless the defendant requests otherwise and the court and prosecutor concur, ORS 144.795), there is no statutory requirement that such a report include a personal interview with the defendant.

Except where a statute provides a mandatory penalty, the sentence imposed by the court usually involves the exercise of judgment by the sentencing judge. This statement from *State v. Scott,* 237 Or 390, 399-400, 390 P2d 328 (1964), is apposite:

"The sentencing court in Oregon has the complete and unrestrained discretion to sentence a convicted defendant up to the maximum for the particular crime as fixed by the legislature. However, the Constitution of Oregon, Art I, § 15, requires that reformation be the object of the sentence, not vindictive justice. Apart from this constitutional requirement, the sentencing court today considers the criminal, as much as the crime, in fixing the sentence. The application of these two principles can cause the same court to give two entirely different sentences to two defendants convicted of committing the same crime.

"The sentencing court must be provided with a great variety of information in order that it can competently perform its most burdensome function * * *. The issue after conviction * * * is not: Was the crime committed? Rather, the issues at this time are: What is the character of the defendant? Will he be a menace to society if he is not incarcerated? Will he be more likely to respond to probation or to imprisonment? * * *."

In *Buchea v. Sullivan,* 262 Or 222, 228, 497 P2d 1169 (1972), we stated:

"* * * The theory behind the use of presentence investigations is that the sentence should be individualized to the offender: it should fit him, not merely the crime. If criminal correction is intended to effect reformation and rehabilitation, as well as to provide protection to the public, the sentence should be tailored to the defendant's life history and personal characteristics."[1]

---

[1] A commentary on presentence procedures in federal courts describes the function of the reports in the sentencing process as follows:

"The development of sentencing procedures, including the presentence report, is intimately connected with the rehabilitative model of sentencing * * *. It [the rehabilitative sentencing model] is premised on the assumption that a sentencing judge, armed with an intimate knowledge of the offender's character and background and aided by scientific and clinical evaluations, can determine an appropriate sentence and treatment program that will rehabilitate the offender. Under this model, the sentencing judge seeks to define the offender's exact personality and social situation, and then prescribes an 'individualized' sentence and treatment program. Because rehabilitation is the primary objective, the sentencing judge theoretically is less concerned with deterring future crime or achieving retribution for society.

"Individualized sentencing based on the rehabilitative model involves three related premises in the American criminal justice system. First, a sentencing judge has broad discretion to select a sentence. He may sentence the defendant to a fixed or indeterminate period of imprisonment or commitment, a period of probation, a suspended sentence, a fine, or some combination of these. The judge's decision, if within statutory limits, is generally unreviewable. Second, a

The presentence interview is not conducted by a police officer. In many cases, the interviewer would be the defendant's probation officer, should the defendant be placed on probation. The examination is not prosecutorial in nature; rather, the aim is to obtain as much information as possible relevant to the imposition of an appropriate sentence. The interview is not initiated by the prosecution, nor is the interview adversarial. It is generally conducted with neither the defendant's attorney nor the prosecuting attorney present. It is not police-initiated custodial interrogation in the sense of the interrogation in *Edwards v. Arizona*, 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981).[2]

---

sentencing judge must have complete information about every aspect of the offender's life in order to make an accurate diagnosis and choose an effective sentence. Third, the sentencing decision is made in a quasi-administrative setting that is virtually free of triallike procedural safeguards." (Footnotes omitted.) S. Fennell and W. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv L Rev 1613, 1621-1622 (1980).

[2] Presentence reports are prepared and used after conviction incident to the imposition of sentence. Concerning the use of information incident to sentencing, Mr. Justice Black, speaking for the court in *Williams v. New York,* 337 US 241, 246-251, 69 S Ct 1079, 93 L Ed 1137 (1949), observed that the rules applicable to the adversarial phases of a criminal prosecution do not necessarily apply in a sentencing hearing. The opinion states:

"* * * A sentencing judge * * * is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

"* * * * *.

"* * * And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues."

*Compare* this descriptive language from a more recent case, addressing the role of an analogous figure, the parole officer:

"The parole officer's attitude toward these decisions reflects the rehabilitative rather than punitive focus * * *." *Gagnon v. Scarpelli,* 411 US 778, 785, 93 S Ct 1756, 36 L Ed 2d 656 (1973).

In summary, the presentence interview is made with the best interests of the defendant in mind, often in a noncustodial environment, with rehabilitation an important objective, and in an atmosphere which is neither prosecutorial nor adversarial.

Article I, section 11, of the Oregon Constitution, reduced to its simplest terms, guarantees that "in all criminal prosecutions the accused shall have the right * * * to be heard by himself and counsel * * *."[3] Article I, section 11, was taken from essentially identical provisions in Article I, section 13, of the Indiana Constitution of 1851, and was adopted without amendment or discussion. C. Carey, A History of the Oregon Constitution 120, 402, 468 (1926).[4]

The right to counsel in the United States was not derived from English common law. On the contrary, the right to counsel as known in the United States arose as a reaction to perceived inadequacies in the English criminal law system. Under that system a person charged with a felony was denied the aid of counsel at trial, except with regard to legal questions, even though persons accused of misdemeanors and parties in civil cases were entitled to the full assistance of counsel. The English policy was rationalized by the maxim that "the judge was counsel for the prisoners." Although the policy was subject to vigorous criticism, the rule remained unchanged by Parliament until 1836.[5] *See* 4 Blackstone Commentaries 354-356; *United*

---

[3] The Sixth Amendment provides that "in all criminal prosecutions the accused shall * * * have the Assistance of Counsel for his defense."

[4] The 1851 Indiana constitutional provisions were derived from Article 13 of the Indiana constitution of 1816 ("That in all criminal prosecutions, the accused *hath a right to be heard by himself and counsel * * * and shall not be compelled to give evidence against himself*"), which were adopted nearly verbatim from the Ohio constitution and received little or no discussion before adoption. R. Twomley, *The Indiana Bill of Rights*, 20 Ind L J 211-212 (1945); 7 Swindler, Sources and Documents of United States Constitutions 554 (1978).

A thorough history and analysis of the "right to be heard by himself" clause of Article I, section 11, is contained in the concurring opinion of Lent, J., in *State v. Douglas*, 292 Or 516, 527-536, 641 P2d 561 (1982).

[5] This limitation on the right to counsel was described and criticized by Blackstone as follows:

"When the jury is sworn, if it be a cause of any consequence, the indictment is usually opened, and the evidence marshalled, examined, and enforced by the counsel for the crown, or prosecution. But it is a settled rule at common law, that no counsel shall be allowed a prisoner upon his

*States v. Ash,* 413 US 300, 306-310, 93 S Ct 2568, 37 L Ed 2d 619 (1973); *Powell v. Alabama,* 287 US 45, 60-61, 53 S Ct 55, 77 L Ed 158 (1932). R. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind L Rev 720 (1976).

An express grant of a right to counsel first appeared in the prerevolutionary Massachusetts Body of Liberties. 1 Schwartz, The Bill of Rights: A Documentary History 69 (1971). It provided:

"Every man that findeth himselfe unfit to plead his owne cause in any Court shall have Liberties to employ any man against whom the Court doth not except, to helpe him, Provided he give him noe fee or reward for his paines. This shall not exempt the partie him selfe from Answering such Questions in person as the Court shall thinke meete to demand of him." Mass. Body of Liberties Art 26 (1641), reprinted in 1 Schwartz, *supra* at 74.[6]

---

trial, upon the general issue, in any capital crime, unless some point of law shall arise proper to be debated. A rule, which (however it may be palliated under cover of that noble declaration of the law, when rightly understood, that the judge shall be counsel for the prisoner; that is, shall see that the proceedings against him are legal and strictly regular) seems to be not at all of a piece with the rest of the humane treatment of prisoners by the English law. * * * And the judges themselves are so sensible of this defect, that they never scruple to allow a prisoner counsel to instruct him what questions to ask, or even to ask questions for him, with respect to matters of fact: for as to matters of law, arising on the trial, they are *entitled* to the assistance of counsel. * * *.

"* * * * *.

"Upon the trial of issues which do not turn upon the question of guilty or not guilty, but upon collateral facts, prisoners under a capital charge, whether for treason or felony, always were entitled to the full assistance of counsel. * * * It is very extraordinary that the law of England should have denied the assistance of counsel, when it is wanted most, *viz.* to defend the life, the honor, and all the property of an individual. It is the extension of that maxim of natural equity, that every one shall be heard in his own cause, that warrants the admission of hired advocates in courts of justice; for there is much greater inequality in the powers of explanation and persuasion in the natural state of the human mind, than when it is improved by education and experience." 4 Blackstone's Commentaries 355-367. (Footnotes omitted; emphasis in original.)

*See also,* F. Rackow, *The Right to Counsel: English and American Precedents,* Wm & Mary Qtly, 3d Ser, XI, 3-12 (1954).

[6] The Massachusetts Body of Liberties served as a model for the 1683 New York Charter of Liberties and the 1701 Pennsylvania Charter of Privileges.

Note that the New York Charter of Liberties contained no provision concerning the defendant's right to counsel. Also note that an early Pennsylvania document, the 1682 "Pennsylvania Frame of Government and Laws Agreed Upon

The English rule was rejected by at least 12 of the original 13 colonies,[7] *United States v. Ash, supra,* 413 US at 306-307; *Powell v. Alabama, supra,* 287 US at 62-65, although the scope of the colonial right to counsel, as granted by charter or statute or as allowed in practice, differed in various colonies.[8] A vivid example of the role of counsel in one colonial trial is presented by the 1735

in England &c" provided, as one of the "Laws Agreed Upon in England," that "in all courts all persons of all persuasions may freely appear in their own way, and according to their own manner, and there personally plead their own cause themselves, *or, if unable, by their friends."* (Emphasis added.) 1 Schwartz, The Bill of Rights: A Documentary History 51, 162 *et seq* (1971). It is significant that the Pennsylvania document was authored by William Penn, who was himself subjected to a political trial in England, which was conducted without defense counsel or witnesses (although Penn and his co-defendant were allowed to freely speak, although not under oath). The future Pennsylvania colonists were concerned, even prior to leaving England, with the need to have another plead one's cause before the court, as incident to the right to "appear" on one's own behalf. The Frame of Government of 1682 was repealed and replaced by the Charter of Privileges of 1701, also associated with William Penn, which provided, in Article V, that "all criminals shall have the same privileges of Witnesses and Council as their Prosecutors." B. Schwartz, The Great Rights of Mankind 49 (1977).

[7] An express provision for the right to counsel appeared in the following revolutionary constitutions (which were adopted by the people, through elected conventions, to replace colonial charters): Pennsylvania Declaration of Rights, Art IX (1776) ("That in all prosecutions for criminal offenses, a man hath a right to be heard by himself and his council"); Delaware Declaration of Rights § 14 (1776) ("That in all prosecutions for criminal offences, every man hath the right * * * to be allowed counsel"); Maryland Declaration of Rights, Art XIX (1776) ("That, in all criminal prosecutions, every man hath a right * * * to be allowed counsel"); New York Constitution, Art XXXIV (1777) ("that in every trial on impeachment, or indictment for crimes or misdemeanors, the party impeached or indicted shall be allowed counsel"); Vermont Declaration of Rights § X (1777) ("That in all prosecutions for criminal offences, a man hath a right to be heard, by himself and his counsel"); Massachusetts Declaration of Rights, Part I, Art § XII (1780), New Hampshire Bill of Rights, Art XV (1783) ("And every subject shall have a right to produce all proofs, that may be favorable to him, * * * and to be fully heard in his defence by himself, or his council, at his election"). R. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind L Rev 713, 729-730 (1976); 1 Schwartz, The Bill of Rights: A Documentary History 231-375 (1971). The right to counsel was also granted by later constitutions and statutes which predated the federal bill of rights. *See Powell v. Alabama, supra,* 287 US at 61-65; *State v. Douglas,* 292 Or 516, 527-528, 641 P2d 561 (1982) (Lent, J., concurring); F. Rackow, *The Right to Counsel: English and American Precedents,* Wm & Mary Qtly, 3d Ser, XI, 12-20 (1954).

[8] For example, New York and Rhode Island counsel could only address points of law. In Massachusetts, as noted above, the exercise of the right was only limited to one who found himself "unfit to plead his owne cause." Clinton, *supra* at 723-724.

The limited right to counsel afforded a criminal defendant in colonial New York was described as follows:

seditious libel trial of the printer, Peter Zenger, in New York.[9] Two respected attorneys appeared on the defendant's behalf after his arrest, demanded reasonable bail, and filed objections to the commission of the court's two justices. In response, the court held the two attorneys in contempt and disbarred them, apparently deliberately, to remove from Zenger's defense "the most brilliant attorneys in the Province and the ones most likely to success." J. Marke, Vignettes of Legal History 232 (1965). The court then appointed an attorney of its choice to defend Zenger. The appointed attorney entered a plea of not guilty on Zenger's behalf. However, Zenger's supporters secretly retained a prominent Philadelphia lawyer, Andrew Hamilton, who appeared at trial and was grudgingly permitted to conduct Zenger's defense. Hamilton and the prosecutor engaged in vigorous legal argument before the court and the jury and Hamilton addressed the jury at length in summation. Zenger was acquitted. The details of this prerevolutionary trial demonstrate that even in a colony in which the right to counsel was not expressly guaranteed, the defense attorney played a significant role in the trial with respect to the technicalities of the law.

James Madison, in drafting the Bill of Rights for recommendation to Congress, considered some 210 different

---

"* * * [I]n this field few forensic battles were fought, chiefly because counsel was only occasionally employed in criminal cases. Attorneys appeared for defendants in Dongan's time, but it is apparent from the sources that the restrictions of English law respecting the right to counsel were followed. That is to say, only on points of law could counsel appear in felony cases, and there is no evidence that the colonial judges indulged prisoners beyond this limit as sometimes occurred in England. In misdemeanor cases, the liberty of defendant to be represented at all stages of the proceedings was respected, and in the provincial court minutes are numerous instances where counsel made appearances, entered pleas, argued motions and the like." J. Goebel, Jr. & T. Naughten, Law Enforcement in Colonial New York 573-574 (1944). (Footnotes omitted.)

Rhode Island, in its code of 1647, provided that:

"* * * [I]t shall be the lawful privilege of any person that is indicted, to procure an attorney to plead any poynt of law that may make for the clearing of his innocencye." L. Levy, Origins of The Fifth Amendment: The Right Against Self-Incrimination 356 (1968).

[9] The case is often cited as the case establishing the proposition that truth is a defense to libel. The trial is described in detail by Julius Marke in Vignettes of Legal History, 224-240 (1965), and by Irving Brant in The Bill of Rights, 175-182 (1965).

amendments which had been proposed by the ratifying conventions of eight states. 2 Schwartz, *supra* at 983, 1167.[10] He did not use the "right to be heard by * * * counsel" language that was later included in the Oregon constitution, *Id.* at 1027, although such language was proposed by the minority in Pennsylvania. Our research has not disclosed any reason for Madison's choice of words and it appears that there was no congressional debate of the substance of the provision. It is clear, however, that the phraseology ultimately adopted by the drafters of the Oregon Constitution in 1859 ("to be heard by himself and counsel") predated the 1789 language of the federal bill of rights (the right "to the Assistance of Counsel for his defence") by some 13 years, and there is no historical basis for interpreting the "right to counsel" provisions of the two constitutions differently.

It is apparent that the colonists, in guaranteeing the "right to be heard by counsel," contemplated the assistance of counsel in adversarial stages of criminal proceedings including the presentation of evidence, examination of witnesses and the presentation of legal objections, motions, and arguments to the judge and jury as to the law and the facts. I have found nothing in state or federal constitutional history that leads to the conclusion that the right "to be heard * * * by counsel" guaranteed by Article 1, section 11, of the Oregon constitution, and the defendant's right "to the Assistance of Counsel for his defence," guaranteed by the Sixth Amendment to the United States Constitution, were designed to achieve any other result.

This court has held that the right to counsel in certain pretrial stages is an extension of a defendant's right

---

[10] The ratifying conventions of eight states officially or unofficially proposed bills of rights as amendments to the federal constitution. 2 Schwartz, *supra* at 983 (1971). Three states included an express "right to counsel" in their proposed amendments. The first was Pennsylvania, where the minority issued an "Address and Reasons of Dissent," which was widely disseminated and which sought to grant the defendant "in all capital and criminal prosecutions * * * a right * * * to be heard by himself and his counsel." *Id* at 627, 658. Virginia and North Carolina proposed bills of rights which would grant a criminal defendant the right "to be allowed counsel in his favor." *Id* at 841, 967. The New York convention included the following provision as part of the official declaration of rights: "That in all Criminal Prosecutions, the Accused ought to * * * have the means of producing his Witnesses and the assistance of Council for his defense." *Id* at 911-918.

to representation by counsel in court. *State v. Newton,* 291 Or 788, 802, 636 P2d 393 (1981).

> "* * * Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel. * * *" *State v. Newton, supra,* 291 Or at 802-803.

Both constitutions refer to the right to counsel "in all criminal prosecutions." The term "criminal prosecution" is not limited to the trial itself, but has been recognized in Oregon decisions as including a number of other procedures such as: arraignment, *Miller v. Gladden,* 249 Or 51, 54, 437 P2d 119 (1968); appeal, *Richardson v. Williard,* 241 Or 376, 378, 406 P2d 156 (1965); preliminary hearing, *see State v. Clark,* 291 Or 231, 234, 630 P2d 810 (1981); post-indictment lineup, *see State v. Meyers,* 24 Or App 561, 564, 546 P2d 771 (1976); and sentencing and probation revocation, *Perry v. Williard,* 247 Or 145, 149, 427 P2d 1020 (1967); *Gebhart v. Gladden,* 243 Or 145, 150, 412 P2d 29 (1966); all being situations in which an unaided layperson often lacks the training, education and skill to cope with procedures which are at times intricate. The point is that the right to counsel exists, not only in the formal trial stage of a criminal prosecution, but also in situations which present the same dangers that gave birth to the right itself. *United States v. Ash,* 413 US 300, 311, 93 S Ct 2568, 37 L Ed 2d 619 (1973). Underlying all of these decisions and rules is the premise that the accused is entitled to the assistance of counsel in meeting the claims of the prosecution where, without the assistance of counsel, the defendant might be prejudiced in his or her defense.

All of the situations in which the right to counsel has been upheld in this state involved trial-like situations in which there has been a confrontation between the prosecutor and the defendant. The confrontation may begin as early as the arraignment stage and it continues through the sentencing stage. But that does not mean that, at every intermediate step of the way, the defendant must be afforded the right to have counsel present. In a

nonconfrontive situation such as a photographic (a "throwdown") display, the Supreme Court of the United States has held that cross-examination at trial is adequate protection under the federal counterpart to our Article I, section 11. *United States v. Ash, supra,* 413 US at 313-314.

A presentence interview is neither adversarial, confrontive, nor a part of a "criminal prosecution," as that term is used in Article I, section 11. Whether the term "criminal prosecution" be viewed through the eyes of one of the framers of the constitution or through the eyes of a knowledgeable person in 1982, the presentence interview is not prosecutorial in nature. In such a situation, Article I, section 11, does not require that defendant be given counsel. Guilt is no longer an issue. The need to be heard by counsel is not there present, for the defendant has a constitutional right to be heard by counsel at the hearing at which the report is considered. ORS 137.079 requires that defendant or his attorney have access to the report "a reasonable time before the sentencing." These procedures are sufficient to protect the defendant's rights under Article I, section 11. There is no risk of irremediable harm from the absence of counsel at the presentence interview.

I also disagree with the plurality's conclusion that to bar defendant's lawyer from the presentence interview would contravene the provisions of the Sixth Amendment of the Constitution of the United States. The plurality opinion's Sixth Amendment analysis appears to be: A defendant has the right to the assistance of counsel at all "post-indictment out-of-court critical stages, where, without the assistance of counsel, the legal interests of the defendant might be prejudiced" 293 Or at 315. Sentencing "is a critical stage of a criminal prosecution at which a defendant is guaranteed counsel," 293 Or at 315, and that "just as a sentencing hearing to determine a defendant's future liberty is a stage of a prosecution at which the assistance of counsel cannot be denied, so is a presentence interview," 293 Or at 317. Therefore, the Sixth Amendment (and the Oregon Constitution) "require that counsel may not be barred from attendance at a presentence interview." 293 Or at 318. It is not altogether clear whether the plurality bases its Sixth Amendment conclusion on the premise that the

presentence interview is an "out-of-court critical stage" or on the premise that the presentence interview is a "court proceeding." The stated conclusion is that the presentence interview is a "stage of a prosecution."

I am convinced that the Supreme Court of the United States would not hold that the defendant's Sixth Amendment rights have been violated in this case. The cases in which the right to counsel has been held to exist involve proceedings which were adversarial or confrontive in nature, or situations involving obtaining evidence from the witness's lips for use at trial.[11] The Supreme Court's Sixth Amendment holdings are based, at least in part, upon the need for counsel to protect the defendant from the prejudice that "* * * an unaided layman [with] little skill in arguing the law or in coping with an intricate procedural system [would encounter in the absence of counsel]." *United States v. Ash,* 413 US 300, 307, 93 S Ct 2568, 37 L Ed 2d 619 (1973). The right has been extended to various out-of-court events that are appropriately considered to be "critical" stages of a criminal prosecution because the absence of counsel, in such situations, presents danger of substantial irremediable prejudice. The function of the lawyer in such situations "has remained essentially the same as his function at trial." *Ash, supra,* 413 US at 312.

One such out-of-court event is a court-ordered pretrial psychiatric interview. Most courts hold that a defendant is not entitled to have counsel present at a court-ordered pretrial psychiatric interview, which the defendant must attend, or lose the right to assert a defense of lack of mental capacity. *See United States v. Baird,* 414 F2d 700, 711 (2d Cir 1969); *United States v. Bohle,* 445 F2d 54, 67 (7th Cir 1971). *Compare, United States v. Cohen,* 530 F2d

---

[11] The Supreme Court, in *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), held that the right to the assistance of counsel is a fundamental right, essential to a fair trial. Consistent with *Gideon,* the Supreme Court has held that the defendant has a right to counsel at sentencing on a guilty plea, *Townsend v. Burke,* 334 US 736, 68 S Ct 1252, 92 L Ed 1690 (1948); at a probation revocation hearing, *Mempa v. Rhay,* 389 US 128, 88 S Ct 254, 19 L Ed 2d 336 (1967); at an arraignment, *Hamilton v. Alabama,* 368 US 52, 82 S Ct 157, 7 L Ed 2d 114 (1961); at a preliminary hearing, *Coleman v. Alabama,* 399 US 1, 90 S Ct 1999, 26 L Ed 2d 387 (1970), and at a lineup, *US v. Wade,* 388 US 218, 230-231, 87 S Ct 1926, 18 L Ed 2d 114 (1967).

43, 47-48 (5th Cir 1976).[12] I perceive a greater need for the assistance of counsel in such a situation; more than in the present case.

When the majority's conclusion is examined in light of only the words of the majority opinion itself, it is apparent that the conclusion results from intuition, not deduction. To illustrate my point, I quote from an authority with which the majority cannot but agree—its own opinion:

> "* * * Often, little purpose would be served by the presence of counsel at a presentence interview and a conscientious defense attorney would not necessarily feel obliged to attend to protect his client's interests. After guilt is no longer in issue, the inquiry is into defendant's background, present situation and attitude. At the hearing, the report of information given by the defendant is subject to disclosure and defense counsel can make objections and present evidence and additional statements by defendant. Given these procedural opportunities, rarely would there be risk of irremediable harm from the absence of counsel at the presentence interview. Yet, circumstances are conceivable where the presence of counsel would be helpful. * * *
>
> "* * * * *.
>
> "It is hard to anticipate why a defense attorney would wish to attend a presentence interview or examination or what professional service he could perform if present. * * * Here, consistent with the trial judge's observations, the petition alleges a need for the attorney to provide what is essentially moral support rather than legal service. * * *" 293 Or at 317-18, 320.

These statements point to the conclusion that there is no pressing need for the attendance of counsel at a presentence interview and that the question is better left to the discretion of the trial judge in a particular case, not as a matter of constitutional right in every criminal case. *See* the dissenting opinion of Campbell, J., 293 Or at 339.

---

[12] *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968); *State ex rel Ott v. Cushing,* 289 Or 695, 617 P2d 610 (1980), and *State ex rel Ott v. Cushing,* 291 Or 355, 630 P2d 861 (1981), all involved court-ordered psychiatric pretrial examinations on behalf of the state and in all of those cases the defendant's attorney was permitted by the trial court to attend.

The majority's strangest utterances are those which, after having created the constitutional right to assistance of counsel at the interview, then depreciate the need for its exercise. It is stated that "little purpose would be served by the presence of counsel at a presentence interview," that "a conscientious defense attorney would not necessarily feel obliged to attend to protect his client's interests," that "guilt is no longer in issue," that "we expect the practical effects of our holding to be negligible in most cases" (293 Or at 317-18, 320). If the right exists, it will be exercised by many, perhaps most defendants, and their attorneys, out of caution or self interest, and the right would have to be intelligently and competently waived. *Schram v. Cupp*, 425 F2d 612 (9th Cir 1970); *Johnson v. Zerbst*, 304 US 458, 464-465, 58 S Ct 1019, 82 L Ed 1461 (1938).

My research has found no decision of any court, state or federal, involving a claim of a deprivation of a federal or state constitutional right for failure to allow counsel to attend a presentence interview. While the absence of precedent is, by itself, neither dispositive nor even strongly suggestive of the proper result, the absence of such claims suggests that abuses are not occurring incident to presentence interviews and that the fears expressed by the defendant in his brief are either without basis or that a proper response can be made incident to the sentencing hearing.[13]

This court's opinion heralds a new chapter in state and federal constitutional law, based upon a petition which, according to the majority, "alleges a need for the attorney to provide what is essentially moral support rather than legal service." 293 Or at 320. Although the quantitative defense of accused persons will be increased, I envision

---

[13] The separate dissenting opinion of Campbell, J., points out further practical reasons why no constitutional right to counsel exists in this situation. The most puzzling aspect of the majority opinion is its inability to point to any significant reason why an attorney's attendance is or may be necessary at presentence interviews. The majority opinion may possess logical symmetry (Major premise: A defendant is entitled to attendance of counsel at a sentencing proceeding. Minor premise: The presentence interview is a part of the sentencing proceeding. Conclusion: Therefore a defendant is entitled to the attendance of counsel at a presentence interview), but its conclusion has an Achilles heel—an inability to state why its deduction possesses good sense.

no overall qualitative increase in the defense effort, as a result of the court's opinion in this case.

### CAMPBELL, J., dissenting.

I would hold that defendants in criminal prosecutions do not have an absolute right under Article I, section 11 of the Oregon Constitution or the Sixth Amendment of the United States Constitution to have a lawyer present at their presentence interviews. I would also note that as a matter of due process the sentencing judge in his sound discretion may be required to allow a defendant in a particular case the right to have his attorney present at the interview. This is not such a case.

It is my opinion that the Article I, section 11 and Sixth Amendment problem should be resolved by "weighing or balancing" the competing interests. *State ex rel Ott v. Cushing,* 289 Or 695, 617 P2d 610 (1980), *State ex rel Johnson v. Richardson,* 276 Or 325, 555 P2d 202 (1976), *Buchea v. Sullivan,* 262 Or 222, 497 P2d 1169 (1972).

> "No constitutional questions of consequence are cut and dried. Their solution requires the weighing of competing interests; the constitutional question in this case is no exception." *Buchea v. Sullivan, supra,* at 236.

> "In *State ex rel Johnson v. Richardson,* 276 Or 325, 329, 555 P2d 202 (1976) we stated that the rights of the defendant must be weighed against 'the right of the people, as represented by the state, to present competent, persuasive evidence on the defense raised by the defendant.'" *State ex rel Ott v. Cushing, supra,* at 701-702.

The right of the defendant to have an attorney present at the presentence interview must be balanced and weighed against the right of the people to have a prompt, efficient, and reasonable system of preparing presentence reports.

The mere fact that the presentence interview takes place after the commencement (arrest or arraignment) of a criminal prosecution and before the conclusion (sentence) does not make it adverse in nature. The district attorney or a deputy of that office is not present. The defendant is not sworn as a witness or cross-examined. A court reporter does

not make a record of the interview. The general presentence interview is normally conducted by a probation officer. One of the functions of the interview is to determine if the defendant is a candidate for probation. Subject to certain exceptions the presentence report is made available to the defendant or his counsel. ORS 137.079.

The majority at 293 Or 317 (1982) says:

"We do not suggest that every defense attorney is duty bound to accompany his or her client at the probation office. Often, little purpose would be served by the presence of counsel at a presentence interview and a conscientious defense attorney would not necesarily feel obliged to attend to protect his client's interests. After guilt is no longer in issue, the inquiry is into defendant's background, present situation and attitude. At the hearing, the report of information given by the defendant is subject to disclosure and defense counsel can make objections and present evidence and additional statements by defendant. Given these procedural opportunitites, rarely would there be risk of irremediable harm from the absence of counsel at the presentence interview. Yet circumstances are conceivable where the presence of counsel would be helpful. We do not hold that the presence of counsel is required at every presentence interview or that his absence would constitute ineffective assistance of counsel. Rather, we hold only that Article I, section 11, and the Sixth Amendment require that counsel may not be barred from attendance at a presentence interview."

In effect the majority has held that the defendant has an absolute constitutional right to have counsel present at the presentence interview, but then has gone further to give the Oregon State Bar some "fatherly advice" by saying that the defendant should exercise this right on only rare occasions.

It is not certain that the bar will accept this "fatherly advice." In the first place, it is the defendant's right and not the attorney's right. The choice to exercise the right rests only with the defendant. Even so, some lawyers may think that they will be subject to a possible malpractice complaint if they do not attend the presentence interview. Others may perceive that their failure to attend will trigger post-conviction proceedings. The defendant may

demand to have his attorney at the interview to "get his money's worth."

Many of the attorneys who attend the presentence interview will be excess baggage. The presence of the attorney, or any third person for that matter, will tend to inhibit the interview.[1] The defendant should be given a chance to prove that he or she can handle a one on one interview and thereby show that he or she is a candidate for probation. The probation officer will get a more accurate and complete picture of the defendant at the interview if no third persons are present.

Given the opportunity, I would hold that the right of the people to have a prompt, efficient and reasonable procedure for preparing presentence reports outweighs the defendant's right to have an attorney present at the presentence interview. Setting up an interview for three people instead of two necessarily slows down the system. If the presence of an attorney in the vast majority of cases is not necessary, the efficiency of the procedure is reduced—the time of the attorney would be better spent elsewhere. If the presence of the of the attorney inhibits the interview it is unreasonable to employ and pay one for that purpose.[2] The last thing the criminal justice system in Oregon needs is for this court to place upon it an additional burden when the present system, on occasion, sputters, squeaks and groans.

I agree that there are certain isolated cases in which the defendant may need an attorney at the presentence interview. For example, where the defendant has been indicted for two interrelated crimes and has been convicted of one and the other is still pending it may be necessary that an attorney be present to make sure that the

---

[1] If the defendant's attorney is the dominant person present at the interview he will be hard pressed to keep from interjecting himself into the discussion. Anyone who has interviewed a 17 year old juvenile with his parents present knows who answers the questions.

[2] The authority for talking about such a "vulgar" subject as money is *Gagnon v. Scarpelli*, 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), where the United States Supreme Court in considering the defendant's right to have an attorney at a probation or parole revocation hearing said at page 665:

"Certainly, the decisionmaking process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial."

defendant does not discuss the pending case during the interview.

The most reasonable way to handle this problem is to give all defendants, as a matter of due process, the right to petition the sentencing judge for permission to have an attorney to represent them at the presentence interview. The sentencing judge would then, based upon his sound discretion, determine if an attorney was necessary in the individual case. This procedure would follow that set out by the United States Supreme Court in *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), regarding the necessity of an attorney to represent the defendant at a probation or parole revocation hearing. The Court at page 666 said:

> "We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees."

In this particular case the trial judge exercised his discretion and denied the defendant's motion to have his attorney present at the presentence interview. The judge in making his ruling said:

> "* * *The thrust of your argument is not so much to urge the necessity of legal counsel as a legal advisor but that this man needs someone with whom he trusts and would feel more comfortable and ask that you be there. * * * I think that there are many reasons that having an attorney present at this state of the presentence interview would inhibit the process. * * *."

I would hold that the trial judge did not abuse his discretion. A further reason for denying the defendant's petition is that mandamus will not lie to control judicial discretion. *State ex el Ricco v. Biggs,* 198 Or 413, 255 P2d 1055 (1953).

For these reasons I dissent.