## STATE OF OREGON,
*Respondent,*

*v.*

## LUIS ALEJANDRO LOPEZ,
*Appellant.*

(C85-05-32026; CA A42352)

745 P2d 788

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for aggravated murder. ORS 163.095. He contends that the trial court erred in failing to suppress statements that he made to police, in violation of his right to counsel under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments.[1] We affirm.

On April 5, 1985, Portland police began investigating the death of Michelle Lowe. On April 9, Romero told them that defendant had murdered Lowe.. On April 11, Detectives Frome and Goodale talked to defendant at Jefferson High School and requested that he come to the police station for questioning. He agreed and, during the questioning, he stated that Romero had killed Lowe. The detectives gave defendant *Miranda* warnings, and he repeated his accusation against Romero in a tape-recorded statement. He took police to a place where he stated that he and Romero had dumped Lowe's body. The detectives asked defendant to return to the police station the next day for a polygraph examination. He agreed. They then returned him to Jefferson High School.

On April 12, Detective Miller gave defendant a polygraph examination. He concluded that defendant was being deceptive and that he had not responded truthfully to the questions: "Did you kill Michelle Lowe?" and "Did you see someone strangle Michelle Lowe?" Goodale and Frome again gave him *Miranda* warnings, and he signed a form acknowledging that he had been advised. He told Frome that he had watched as Romero strangled Lowe with defendant's bandana. He was given *Miranda* warnings again, and he repeated his accusation during a second tape-recorded statement. The detectives then took him home.

On April 15, Goodale asked defendant to provide the police samples of his hair, saliva and blood. He agreed. Goodale picked him up and took him to the police station, where

---

[1] Article I, section 11, of the Oregon Constitution, provides, in relevant part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

The Sixth Amendment to the United States Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

technicians obtained the samples. Goodale scheduled defendant to take a second polygraph examination on April 17 and then drove him home. On April 17, Goodale picked defendant up at his home and took him to the police station for the second polygraph examination.

On April 24, defendant telephoned police to find out if they had been trying to contact him. Goodale said that they had not, but he asked defendant if he would consent to a search of his locker at Jefferson High School. Defendant consented. The locker was searched, but nothing was seized. On May 24, the District Attorney prepared an information charging defendant with murder. The information was filed May 28, when an arrest warrant was issued.

Goodale and Frome learned that defendant was in the Kleberg County, Texas, jail on an unrelated charge. On May 17, he was arraigned on the Texas charge. The parties to the Texas case stipulated that defendant had been informed of and understood his constitutional rights and that a Texas magistrate was prepared to appoint an attorney for him at that time if he had wanted one. On May 22 or 23, defendant was taken before a Kleberg County court and was asked if he wanted counsel on the Texas charge. He stated that he was attempting to retain counsel. Texas Investigator Munoz told defendant that he should inform Munoz if he was unable to obtain counsel. On June 14, defendant received court-appointed counsel in Texas.

On June 12, Goodale and Frome met with defendant at the Kleberg County District Attorney's office and showed him the Oregon arrest warrant. Again, Goodale gave *Miranda* warnings. Defendant stated that he understood his rights and that he was willing to talk to the police.[2] He stated that he had participated in murdering Lowe by holding her arms down while Romero strangled her with a bandana. Again, defendant was given *Miranda* warnings, and he then repeated his statement during a third tape-recorded statement. He did not request an attorney at any time during the June 12 interview. On September 25, he was indicted for Lowe's murder.

[2] The trial court found that there had been no deliberate effort by the police or the District Attorney to delay defendant's return to Oregon in order to get him to make a statement before arraignment.

On December 12, Goodale and Frome met with defendant in the Texas State Prison, where he was serving a sentence following his guilty plea to the Texas charge. After the detectives gave defendant *Miranda* warnings, he agreed to talk with them and signed a *Miranda* waiver card. He stated that he had pulled on one end of the bandana, while Romero pulled on the other end, and that they strangled Lowe. Again, defendant was given *Miranda* warnings, and he repeated his admission during a fourth tape-recorded statement. At trial, defendant moved to suppress his statements of June 12 and December 12, arguing that he was denied his right to counsel.[3] That motion was denied. After a stipulated facts jury trial, defendant was convicted.

Defendant contends that his statements should have been suppressed, because they were obtained in violation of Article I, section 11, and the Sixth Amendment.[4] He argues that, because a criminal information had been filed against him before his June 12 statement, and because an indictment had been returned against him before the December 12 statement, his right to counsel had attached and could not be waived without the presence of counsel.[5] The state argues that, although the information and indictment may have been critical stages at which the right to counsel attached, defendant was advised of his rights, including his right to counsel, each time when the police talked to him, and each time he stated that he understood his rights and was willing to talk to the police. The state emphasizes that defendant had not been arraigned, at which time counsel would have been appointed had he requested it. We first address the state constitutional claim. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983).

The question of whether a defendant may waive his Article I, section 11, right to counsel after an information or

---

[3] Defendant does not challenge the admissibility of statements made earlier to police in Portland, the consent search of his school locker or the consent seizure of blood and hair samples in Portland.

[4] Defendant makes no claim under Article I, section 12, of the Oregon Constitution or under the Fifth Amendment. *See State v. Sparklin,* 296 Or 85, 89-92, 672 P2d 1182 (1983) (discussing those provisions as distinct from Article I, section 11, and the Sixth Amendment).

[5] Defendant makes no claim that his statements to police did not satisfy the common law test of voluntariness. *See State v. Smith,* 301 Or 681, 690-93, 725 P2d 894 (1986).

indictment has been filed, but before counsel has been appointed or retained, is one of first impression in Oregon. *See State v. Milek,* 82 Or App 88, 94-95, 727 P2d 164 (1986). In *State v. Sparklin, supra* n 4, 296 Or at 90, the Supreme Court reviewed the procedures required to protect a defendant's Article I, section 11, rights. Once the state initiates a "criminal prosecution," the right to counsel attaches, independently of the defendant's invocation of that right. 296 Or at 92. If the defendant is represented by counsel, the state must notify the attorney that it wishes to interrogate the defendant, and it must provide the attorney an opportunity to be present. *See State ex rel Russell v. Jones,* 293 Or 312, 647 P2d 904 (1982). If, after counsel has been provided, the defendant voluntarily chooses to proceed without counsel, the state must inform him of his right not to incriminate himself and that his statements may be used against him. *See State v. Mains,* 295 Or 640, 669 P2d 1112 (1983). However, when counsel has not been appointed or retained, there is no requirement that counsel be provided before a defendant may decide to waive counsel. We will not expand the scope of the Article I, section 11, right to counsel as far as defendant requests.

■■ We hold that a defendant who has been charged, but not yet arraigned, who has not retained counsel nor had counsel appointed and who has been advised of his right to counsel and of his right not to incriminate himself, may waive his right to counsel without first consulting an attorney. The police may then question the defendant about the crime charged without violating Article I, section 11. In this case, defendant was advised before each questioning that he had the right to counsel and that he had the right to remain silent. He always stated that he was willing to talk to the police. Nothing in this record indicates that those waivers were not voluntary. Therefore, defendant's Article I, section 11, rights were not violated.

We reach the same conclusion under the Sixth Amendment. In *Michigan v. Jackson,* 475 US 625, ___, 106 S Ct 1404, 89 L Ed 2d 631, 642 (1986), the United States Supreme Court stated:

> "*Edwards* [*v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981)], is grounded in the understanding that 'the assertion of the right to counsel [is] a significant event,' 451 US at 485, and that 'additional safeguards are necessary when the accused asks for counsel.' 451 US at 484. We conclude that

the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation *after a defendant's assertion,* at an arraignment or similar proceeding, *of his right to counsel,* any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." (Emphasis supplied.)

In *Main v. Moulton,* 474 US 159, 170, 106 S Ct 477, 88 L Ed 2d 481, 492 (1985), the Supreme Court stated:

"Once the right to counsel has attached *and* has been asserted, the state must of course honor it." (Emphasis supplied.)

Here, defendant never asserted his right to counsel. Therefore, his Sixth Amendment rights were not violated.

■ Defendant next contends that his statements should have been suppressed because, although he was advised of his *Miranda* rights several times, he was never informed that he could terminate questioning at any time. He argues that *State v. Sparklin, supra,* 296 Or at 89, requires such a warning.[6] We disagree. *See State v. Olson,* 83 Or App 516, 517, 731 P2d 1072 (1987); *see also State v. Smith, supra* n 5, 301 Or at 696 n 10. We find no error.

Affirmed.

---

[6] On this issue, defendant makes no claim under the federal constitution; neither does the text of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), require the giving of that additional advice.