Argued and submitted September 29, 2009, supplemental judgment vacated and remanded for resentencing; otherwise affirmed June 16, appellant's petition for reconsideration filed June 17 allowed by opinion July 28, 2010

See 236 Or App 465, 236 P3d 789 (2010)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RRL KENT PHILLIPS,
*Defendant-Appellant.*

### Multnomah County Circuit Court
070241586; A136876

234 P3d 1030

Elizabeth Ann Corbridge, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellant Division, Office of Public Defense Services.

Robin Rojas McIntyre, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.*

* Brewer, C. J., vice Edmonds, P. J.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction on one count of disorderly conduct in the second degree, ORS 166.025, one count of criminal mischief in the second degree, ORS 164.354, and one count of reckless driving, ORS 811.140, and a supplemental judgment ordering payment of restitution in the amount of $2,728.88. In his first assignment of error, defendant argues that the trial court erred in admitting certain hearsay statements into evidence over his objection. In his second assignment of error, defendant contends that the trial court erred in conducting a restitution hearing, at which defendant represented himself, without first ensuring that defendant had validly waived his right to counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[1] We write only to address defendant's second assignment of error and reject without discussion his first assignment of error. For the reasons that follow, we vacate the supplemental judgment awarding restitution of $2,728.88 and remand for resentencing.

The relevant facts are undisputed. Defendant, a professional truck driver, was charged with the crimes of which he was ultimately convicted as a result of a collision between defendant's pickup truck and the victim's truck, in which the victim's truck was damaged. Defendant appeared without counsel at arraignment, at which time the trial court engaged in the following exchange with defendant:

"THE COURT: [Defendant], I understand you want to hire an attorney; is that correct?

"[DEFENDANT]: Yes, Your Honor.

"THE COURT: Okay. We'll certainly give you sufficient time to do that. In the meantime, as a courtesy, I can have Mr. Betz, who's a lawyer, assist you with the arraignment, get that completed and then talk about a date for you

---

[1] Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]" Similarly, the Sixth Amendment provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

to come back with a lawyer. Would that be all right with you?

"[DEFENDANT]: Sure."

Defendant, through counsel, then acknowledged receipt of the charging instrument, waived further reading of the advice and rights, reserved all rights on the record, entered a plea of not guilty, and requested the appearance of counsel. Thereafter, the trial court set over defendant's case for two weeks to allow defendant time to hire an attorney.

At that next hearing, defendant again appeared without counsel. The trial court inquired whether defendant had made progress in hiring an attorney. Defendant responded that his attorney, who had represented defendant in the past, had been out of town and that defendant had an appointment with him when he returned. The trial court then set over defendant's case for another two-week period. At that next hearing, defendant again appeared without counsel, but indicated that he had successfully retained private counsel, who was unable to be present that day. Defendant requested a jury trial, as his counsel had advised him to do, and the trial court set a date for a pretrial hearing. Defendant was represented by his private counsel throughout the trial and the sentencing hearing.

During the sentencing hearing, because defendant had no prior convictions and the reckless driving conviction would affect defendant's employment, the state did not recommend any imprisonment, but instead recommended other sanctions, including restitution. The trial court agreed with the state's recommendation and, along with other sanctions, ordered defendant to pay restitution for the damage to the victim's truck. The only evidence before the trial court at the sentencing hearing as to the amount of damage sustained by the victim's truck was a repair estimate of $2,471. Because the victim had testified that the truck was traveling at approximately one mile per hour when the collision occurred, the trial court was both surprised at that estimate and uncomfortable ordering restitution in that amount. In order to consider a second estimate of the damage sustained by the

truck, the trial court ordered a later restitution hearing to determine the amount of restitution.[2]

Before the restitution hearing, defendant's counsel moved to withdraw from the case, stating in his supporting affidavit that, "I have spoken to [defendant] and he has advised me that he does not wish to have me represent him at the restitution hearing and that he will represent himself." The trial court permitted defendant's counsel to withdraw from the case, and defendant subsequently appeared at the restitution hearing without counsel. The trial court briefly addressed defendant's appearance without counsel at that hearing as follows:

"THE COURT:  I understand you no longer have an attorney, [defendant]?

"THE DEFENDANT:  No, I didn't see much reason to bring him here.

"THE COURT:  Okay.

"THE DEFENDANT:  I'm currently unemployed now and couldn't afford him.

"THE COURT:  Who was your attorney?

"THE DEFENDANT:  Ben Falk.

"THE COURT:  Okay."

Following that exchange, the trial court proceeded to conduct the restitution hearing. The state presented two new repair estimates for the damage to the victim's truck: one for $2,728.88 and the other for $3,202.41. No argument was made by either party concerning the original estimate of $2,471. Ultimately, the trial court ordered $2,728.88 in restitution, but deferred payment until defendant's appeal was completed.

---

[2] If a victim suffers economic damages, a court must include in the criminal judgment either "[a] requirement that the defendant pay the victim restitution in a specific amount" or "[a] requirement that the defendant pay the victim restitution, and that the specific amount of restitution will be established by a supplemental judgment based upon a determination made by the court within 90 days of entry of the judgment." ORS 137.106(1)(a), (b). The trial court chose the latter option in this case.

On appeal, defendant argues that the trial court erred at the restitution hearing by failing to engage in the "required colloquy" to determine whether defendant's waiver of counsel was knowing, intelligent, and voluntary under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Defendant also argues that the trial court erred by failing to ensure that he knew of his constitutional right to court-appointed counsel, if indigent. Those failures, defendant contends, were not harmless. The state responds that the trial court did not err because, under the totality of the circumstances, defendant had the requisite understanding of the risks of self-representation at the restitution hearing and knowingly and voluntarily waived counsel.

■  Although the parties focus their arguments on whether the trial court erred under the state and federal constitutions, we ordinarily begin our analysis by determining whether a case may be disposed of on subconstitutional grounds. *See Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990) (stating that "[t]his court decides cases upon subconstitutional grounds, where available, even though litigants argue only constitutional errors"). Here, ORS 135.045, which defendant cites in his brief, governs the appointment and waiver of counsel in a criminal action.[3] Neither the Oregon Supreme Court nor this court has previously interpreted the current text of that statute, which appears to impose on the trial court obligations congruent to those imposed under the state and federal constitutions when a defendant wishes to waive the right to counsel. *Compare*

---

[3] ORS 135.045 provides, in part:

"(1)(a) If the defendant in a criminal action appears without counsel *at arraignment or thereafter*, the court shall determine whether the defendant wishes to be represented by counsel.

"(b) If the defendant does wish to be represented by counsel, the court, in accordance with ORS 135.050, shall appoint counsel to represent the defendant.

"(c) *If the defendant wishes to waive counsel, the court shall determine whether the defendant has made a knowing and voluntary waiver of counsel.* The court shall accept the waiver of counsel if the defendant is not charged with a capital offense. The court may decline to accept the waiver of counsel if the defendant is charged with a capital offense."

(Emphases added.)

ORS 135.045(1)(c) ("If the defendant wishes to waive counsel, the court shall determine whether the defendant has made a knowing and voluntary waiver of counsel.") *with State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992) (stating that, under Article I, section 11, "a trial court may accept a defendant's proffered waiver of counsel only if it finds that the defendant knows of his or her right to counsel and, if indigent, of his or her right to court-appointed counsel, and that the defendant intentionally relinquishes or abandons that right"), *and Faretta v. California*, 422 US 806, 835, 95 S Ct 2525, 45 L Ed 2d 562 (1975) (stating that, under the Sixth Amendment, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [traditionally associated with the right to counsel]"). Given that apparent congruence and the absence of any argument by defendant regarding an interpretation of the statute under which he would be provided with broader protection or more complete relief than that provided by the constitutional provisions, we return to consider the constitutional arguments advanced by the parties under Article I, section 11, and express no further opinion on the interpretation of ORS 135.045.

Defendant argues, and the state does not dispute, that defendant's restitution hearing was a stage of defendant's criminal prosecution to which the constitutional right to counsel attached. We agree. Under Article I, section 11, "counsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be 'heard,' including the sentencing stage, whether this is wholly performed by the judge or shared with non-judicial persons." *State ex rel Russell v. Jones*, 293 Or 312, 315, 647 P2d 904 (1982). "A restitution provision in a judgment properly is considered a sentence." *State v. Edson*, 329 Or 127, 130 n 1, 985 P2d 1253 (1999). Therefore, a hearing that determines the amount of restitution that a convicted defendant must pay the victim is a stage at which the defendant has the right to be "heard" and counsel cannot be excluded.

As was noted above, if a defendant wishes to waive his or her right to counsel under Article I, section 11, the court "may accept a defendant's proffered waiver of counsel only if it finds that the defendant knows of his or her right to

counsel and, if indigent, of his or her right to court-appointed counsel, and that the defendant intentionally relinquishes or abandons that right." *Meyrick*, 313 Or at 133. Because courts are reluctant to find that fundamental constitutional rights have been waived, "a valid waiver will not be presumed from a silent record." *Id.* at 131-32 (citations omitted).

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand[s] the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate.

"Article I, section 11, does not require a catechism by the trial court, however, before the right to counsel may be validly waived by a defendant. The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right."

*Id.* at 133-34 (footnote omitted). Examination of the record as a whole includes consideration of "the defendant's age, education, experience, and mental capacity; the charge (whether complicated or simple); the possible defenses available; and other relevant factors." *Id.* at 132.

In *Meyrick*, the court affirmed the judgment of the trial court and, after examining the totality of the circumstances shown by the record, concluded that "[the] defendant knew that he had a right to be represented by counsel at trial and that he intentionally relinquished that right." *Id.* at 136. The defendant had represented himself throughout the proceedings and had been advised by the trial court at arraignment of his right to counsel and, if indigent, of his right to court-appointed counsel. The trial court had also cautioned the defendant about the " 'potential problems' " that he faced in representing himself; the defendant responded that he

understood those warnings. In addition, the defendant, at multiple stages in the proceedings, unequivocally stated that he wanted to represent himself. *Id.* at 134-35. Further, the defendant told the trial court that he had discussed his case with an attorney and that that attorney had warned the defendant that his chances of winning his case without counsel " 'were akin to [the attorney's] chances of handling nuclear materials with his bare hands and not being affected.' " *Id.* at 135. Lastly, in reaching its conclusion that the defendant had made a constitutionally valid waiver of counsel, the court also considered that, at the relevant time, the defendant was a 25-year-old college student, who had recently been a felony defendant in another criminal court. *Id.* at 136.

In stark contrast to the disposition reached by the court in *Meyrick* is that reached by this court in *State v. Gaino*, 210 Or App 107, 149 P3d 1229 (2006). In *Gaino*, the trial court, without first explaining the risks of proceeding without counsel, allowed the defendant to proceed without counsel when she petitioned to extend the duration of her driving while under the influence of intoxicants diversion program and simultaneously offered a plea of guilty. *Id.* at 109-10. On appeal, we concluded that, because the trial court did not determine whether the defendant was aware of the risks of self-representation, the defendant had made "a *prima facie* demonstration of error." *Id.* at 115. We then went on to consider whether the state had nonetheless shown that the defendant was aware of those risks. *Id.* We noted that the record established that the defendant was 44 years old with a seventh grade education at the time she submitted her petition to enter a plea of guilty. Additionally, it did not appear that the defendant had any other experience in the criminal justice system. Further, the defendant's testimony at the hearings before the trial court indicated that her only source of income was from disability payments and that she believed herself to be mentally disabled. *Id.* Ultimately, we reversed the defendant's conviction, holding that "[t]he state * * * has *not* shown that [the] defendant was nonetheless aware of the risks of self-representation." *Id.* at 116 (emphasis in original).

As in *Gaino*, here, defendant has shown *prima facie* error by the trial court, because there is no evidence in the

record that the trial court made any determination at the restitution hearing regarding the constitutional validity of defendant's proffered waiver of counsel. The state, however, argues that, under the totality of the circumstances, defendant did in fact make such a valid waiver. We are not persuaded.

The only matter to be decided at the restitution hearing was the narrow issue of the amount of restitution defendant would be required to pay the victim. At the time defendant was charged on the three counts arising from the collision, he was 48 years old and had been employed as a professional truck driver, indicating that he was likely aware of and understood the potential cost involved in repairing the victim's truck. However, there is no evidence in the record that defendant had prior experience with the criminal justice system. The record does indicate that defendant had been represented by counsel in the past. And, defendant appeared at arraignment expressing his intent to hire counsel, which he ultimately succeeding in doing. Because defendant proceeded through trial and the sentencing hearing with counsel, he had some experience observing the types of things that counsel could do for him in a criminal proceeding and was likely aware of his right to counsel at those stages.

It is not apparent from the record, however, that defendant also understood that he had a right to counsel at the restitution hearing, much less that he had the right to court-appointed counsel, if indigent. In particular, although defendant initially stated that he did not see much reason to have counsel at the restitution hearing, defendant then expressed that he was also motivated in going forward without counsel due his inability to pay his privately retained counsel. The trial court, without first advising defendant of his right to court-appointed counsel, if indigent, allowed defendant to proceed without counsel. Indeed, at *no* time during *any* of the proceedings below did the trial court advise defendant of his right to counsel, his right to court-appointed counsel, if indigent, or the dangers of self-representation. Defendant's responses to the trial court at the restitution hearing regarding his lack of counsel are not equivalent to the unequivocal invocation of the right to self-representation expressed by the defendant in *Meyrick*.

In addition, the affidavit in support of the motion to withdraw filed by defendant's private counsel also does not indicate that defendant was advised of the requisite rights and dangers by his private counsel. The affidavit simply indicates that a discussion was had between defendant and his counsel and that defendant told his counsel that he would prefer to represent himself at the restitution hearing. That affidavit cannot be equated to the statement made by the defendant in *Meyrick*, wherein the defendant disclosed to the trial court that he had spoken to an attorney who had explained to the defendant the "nuclear" risk that the defendant faced if he proceeded without counsel. Taking all of the foregoing into consideration, we conclude that defendant's waiver of counsel was not constitutionally valid because it was not the intentional relinquishment or abandonment of a known right. The trial court erred in allowing defendant to proceed at the restitution hearing without counsel.

That error, however, would not require reversal if it were harmless. "Error is harmless if there is little likelihood that it affected the outcome in this case[.]" *State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996) (citation omitted). Where we are unable to determine what the outcome of a case would have been if the defendant had been represented by counsel instead of proceeding without counsel, the error is not harmless. *See Cole*, 323 Or at 36; *State v. Richardson*, 159 Or App 592, 602-03, 978 P2d 435, *rev den*, 329 Or 479 (1999). Here, because we are unable to tell what the outcome of defendant's restitution hearing would have been if he had been represented by counsel—in particular, whether counsel for defendant could have successfully obtained a lower restitution amount, such as that indicated by the original repair estimate—we conclude that the trial court's error in allowing defendant to proceed without counsel was not harmless.

The state has asked that, if we grant relief on defendant's second assignment of error, we remand the supplemental judgment for entry of $2,471 in restitution, rather than remand for a new restitution hearing. The state contends that doing so would give effect to an agreement made by the parties at sentencing and would also conserve state resources. We decline the state's invitation for the same reasons that we concluded that the trial court's error was not

harmless. That is, we cannot tell what the outcome of the restitution hearing would have been had defendant been represented by counsel. The trial court ordered the restitution hearing in order to determine the amount of restitution in light of additional evidence. It is not our place to substitute our judgment on that issue for that of the trial court in the first instance.[4]

Supplemental judgment vacated and remanded for resentencing; otherwise affirmed.

---

[4] Because our disposition of defendant's arguments under Article I, section 11, affords defendant the relief he seeks on his second assignment error, we need not reach defendant's arguments under the Sixth Amendment.