Argued and submitted June 29, 2010, affirmed March 23, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREW DAVID EASTER,
*Defendant-Appellant.*

Linn County Circuit Court
06112607; A139234

249 P3d 991

Elizabeth Corbridge Ranweiler, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.*

* Brewer, C. J., *vice* Carson, S. J.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

This case involves chutzpa.[1] In short, defendant fired his court-appointed counsel, was convicted of second-degree theft and interfering with a police officer, and now appeals from the judgment of conviction, arguing that the trial court erred in granting his request to represent himself. First, defendant contends that the trial court erred in denying his motion for judgment of acquittal. We reject that assignment without further discussion. Second, defendant contends that the trial court erred in accepting his waiver of the right to counsel during closing arguments because the trial court did not adequately inform him of the risks of self-representation and, as a result, his waiver was not made "knowingly." He then assigns error to the sentence imposed by the trial court, arguing that the trial court erred in proceeding to the sentencing phase of the trial when defendant was not represented by counsel. For the following reasons, we affirm.

The material facts are not in dispute. Based on circumstances involving the theft of a vacuum cleaner from a Home Depot store, defendant was charged with second-degree theft and interfering with a police officer. The charges were not defendant's first interaction with the criminal justice system. Defendant previously had been arrested 27 times and had been convicted of 15 property crimes since 1996. Nine of the convictions for property crimes were felonies. In this case, defendant obtained court-appointed counsel, Tibbetts, who also represented defendant in two other cases that were being prosecuted at the same time. Defendant informed the court that he intended to retain private counsel as soon as he received some expected money. Ultimately, defendant proceeded to trial with Tibbetts as counsel.

Defendant's trial occurred on January 30, 2008. He actively participated in his defense at trial. For example, before trial, defendant alerted the court that he had to leave the proceeding during jury selection to attend a hearing in a

---

[1] *"Chutzpa* is that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." Leo Rosten, *The Joys of Yiddish*, 93 (1968).

different courtroom. Defendant orally waived any right to be present during the proceeding while he was in the other courtroom but objected to the court making any comment to the jury about his absence. Additionally, defendant objected to the court referring to the jurors by number, rather than name. Finally, when defendant returned from the other courtroom, he thought he saw the jurors in this case in the hallway. Accordingly, defendant alerted the court that the jury was prejudiced by his hallway behavior. The court clerk notified the court that the jury had not been in the hallway.

Defendant's active participation in his case continued during the trial. He personally objected to the state's opening statement, asserting that the prosecutor is "not allowed to make statements in which he cannot back up the content of what he says there." During the state's case-in-chief, defendant attempted to aid an objection made by Tibbetts concerning an asserted discovery violation. The court admonished defendant to "speak through your attorney." Defendant responded that his attorney "doesn't speak too well. I can speak well enough." At the close of the state's case-in-chief, Tibbetts told the court that defendant did not intend to present any evidence. Defendant corrected Tibbetts and instructed Tibbetts to include defendant's booking photograph in evidence so that the jury could compare that photograph with other evidence that the state had offered to identify defendant. Finally, defendant participated in the discussion of the proposed jury instructions, specifically requesting an instruction about a witness's prior charge of providing a police officer with false information.

After the state presented its closing argument, defendant moved to discharge his appointed counsel. The court warned defendant that discharging Tibbetts "would be a very bad move * * *." Nonetheless, defendant continued to assert his right to represent himself and his ability to do so competently. The court further expressed its concerns about defendant representing himself in light of his poor behavior throughout the proceeding. The trial court warned defendant that he could lose his right to any closing argument by misbehaving "like you've done about five times today already." The court emphasized to defendant the gravity of that consequence, asking defendant how he was going to win the case

without a closing argument if he misbehaved. In response, defendant explained to the court that he could manage his behavior better if he was presenting his own closing argument, because "[t]his is not a situation in which I'm going to be under such pressure because no one is failing to meet my needs. I'm meeting my own. I can clearly express myself."

Having warned defendant about the pitfalls of failing to comport himself correctly during closing arguments, the court addressed defendant's lack of legal training. Specifically, the court warned defendant that he may not understand the legal nuances of closing arguments:

> "So [defendant], I need you to understand that—say you're doing your closing argument and you say something that's inappropriate, which could happen because a private party hasn't been to law school, and that's no reflection on you. You might not know what is an appropriate closing argument and what isn't, okay."

Having warned defendant that he may unwittingly make legally significant mistakes because of his lack of legal training, the court suggested that defendant allow Tibbetts to remain as a legal advisor:

> "So let's say you say something inappropriate and [the prosecutor] stands up and says 'I object. He can't do that,' well, then I'm going to have to rule and I'm going to have to say either it is or it isn't improper under the law, and if you need advice Mr. Tibbetts has graciously agreed to stay in the courtroom so he can still be a resource to you. If there's a legal question in your mind you can still go back to him and say 'Hey,' you know, 'what should I argue legally about this objection.' Do you understand?"

Defendant expressed his understanding of the court's warning and the assistance he could obtain from Tibbetts, and the court proceeded to set ground rules for defendant's presentation of his closing arguments. Defendant agreed to the ground rules, which, generally, required him to give his argument from behind the counsel table, base the argument exclusively on evidence presented at the trial, and refrain from swearing or abusive language. After Tibbetts asked a question to clarify one of the ground rules, defendant agreed to them and accepted Tibbetts's assistance as a legal advisor.

The court granted defendant's motion to present his own closing arguments.

In his closing argument, defendant attacked the state's ability to identify the person who stole the vacuum. He contended that witnesses had described a suspect who did not match defendant's appearance and that surveillance video footage from the Home Depot store did not provide a picture that could positively identify the vacuum thief. Defendant concluded his arguments to the jury.

Next, the court instructed the jury. After it excused the jury to deliberate, the trial court asked the parties if they had any objections to the instructions. Tibbetts indicated that the defense had no objections to the instructions. At that point, Tibbetts asked the court if he needed to wait for the jury verdict. The court responded: "That's up to you and [defendant]. I can't imagine—if a legal question comes up from the jury you've been fired, and so I think you're free to go."

The jury convicted defendant of second-degree theft and interfering with a police officer. The court confirmed that the verdict was unanimous.

After accepting the jury's guilty verdict, the court turned its attention to sentencing. The state asked for a sentence of nine months' incarceration. Defendant argued that nine months was unreasonable because his accomplice in the case had received "five days community service" and had a similar criminal record. Additionally, defendant informed the court that he was behaving emotionally at trial because he did not have access to medication that he needed to treat his mental health problems. The court scheduled a sentencing hearing to consider the issues raised by the state and defendant.

During the sentencing phase of the case, defendant focused on his mental health issues. On February 4, 2008, defendant appeared at a hearing with Tibbetts concerning sentencing in this case and the prosecution of another case against defendant. The trial court noted that defendant had waived counsel in this case and cautioned defendant against doing so in the other case. Defendant told the court that he

was having difficulty obtaining medication he needed and asked the court to postpone the sentencing hearing for a week. The trial court granted defendant's request. One week later, on February 11, Tibbetts again appeared at the sentencing hearing to represent defendant. Tibbetts requested another postponement of sentencing so that defendant could obtain a mental health evaluation. The trial court agreed to another postponement to March 4.

At the March 4 hearing, defendant reported that he had obtained a mental health evaluation that he considered unfavorable. Accordingly, defendant requested more time to obtain evidence regarding his mental health. The court again agreed, for the third time, to postpone defendant's sentencing date.

At a hearing on April 1, Tibbetts informed the court that defendant was close to obtaining a second mental health evaluation and requested two weeks to prepare for a sentencing hearing. The court granted a fourth postponement to April 17. Tibbetts also informed the court that defendant had received his anticipated funds, so "he's probably in a position to * * * hir[e] counsel if he still wishes to proceed that way."

At the time of the April 17 hearing, Tibbetts contacted the court to report that defendant had fired him and that defendant did not want Tibbetts to appear at the hearing. The record suggests that defendant, too, did not appear at the hearing; the trial court issued a bench warrant for his arrest. However, at a subsequent hearing on May 23, the trial court and defendant discussed a conversation they had on April 17 concerning defendant's decision to terminate Tibbetts as his counsel.[2]

Finally, defendant appeared in court on May 23 without Tibbetts and made two requests. First, he requested an attorney to represent him at sentencing. Defendant had not retained an attorney. The trial court denied defendant's request. It explained, "I made it real clear to you if you fired Tibbetts that was your court appointed attorney, and there was no real reason to fire him and you did it anyway."

---

[2] The record on this point lacks clarity.

Second, defendant requested another continuance of sentencing to obtain additional information addressing his mental health problems. He explained to the court that he had been in the hospital the night before the sentencing hearing and had received medication for his mental health issues through urgent care. He presented a mental health report to the court. The court reviewed the report and concluded that it advised that defendant required medication to treat his mental health issues. Because defendant had received his medications from the hospital the night before, and the court observed that defendant was speaking intelligently and was "really tracking with what's going on" at the hearing, the court concluded that defendant's mental health did not preclude it from proceeding with sentencing.

Accordingly, the court proceeded with the sentencing hearing. Defendant presented an argument to the trial court before sentencing. He argued that he should be granted probation because his criminal conduct was caused by his untreated mental illness, which he now planned on treating with medication. For its part, the state requested a nine-month term of incarceration. The court described defendant's argument as "very intelligent" and better than "lots of attorneys right here in Linn County." Ultimately, the court sentenced defendant to a six-month term of incarceration on the second-degree theft charge and a concurrent five-day term of incarceration on the interfering with a police officer charge. Defendant objected to the sentences, arguing that the court's sentencing procedure was invalid, "inasmuch as I shouldn't have been sentenced today at all being I didn't have an attorney * * *."

On appeal, defendant contends in his second assignment of error that the trial court should not have accepted his waiver of counsel during closing arguments without having adequately advised him of the risks of self-representation. Additionally, defendant argues, in his third assignment of error, that the trial court's denial of his request for counsel at the sentencing hearing was erroneous.

We begin with defendant's assignment of error to the trial court's acceptance of his waiver, during closing argument, of his right to counsel. Defendant asserts that, for a

waiver of counsel to be valid under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, the waiver must be made with knowledge and understanding of the risks of proceeding without counsel. Defendant asserts that the court's warning that self-representation is "a bad idea" was insufficient, because the court did not explain why self-representation is a bad idea. Therefore, defendant asserts that the record fails to establish that his waiver of counsel was made knowingly. The state contends that defendant failed to preserve that argument at trial and that, even if defendant preserved the argument, he knowingly relinquished his right to counsel.

■■ We start with the issue of preservation. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Defendant did not object to the trial court's failure to obtain his knowing waiver of counsel at trial. Generally, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief * * *." ORAP 5.45. However, in *State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996), the Supreme Court carved out an exception:

> "A defendant whose waiver of counsel is accepted without first being apprised of the risks of self-representation cannot be expected to object to acceptance of that waiver on the ground that he or she was not apprised of those risks."

The court held, in essence, that the trial court's failure to ensure that an uncounseled defendant is adequately informed of the risks of self-representation is reviewable without an objection. The state argues that this case is distinct, because the defendant in *Cole* was unrepresented, whereas here defendant was represented at the time that he asserted his right to represent himself. Essentially, the state argues that Tibbetts had to object to being fired by defendant. That is not how we read *Cole*. The obligation rests with the court to determine whether the waiver of counsel is made knowingly. We proceed to the merits.

■ A defendant has a right under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution to be represented by counsel at

*critical stages* of a criminal proceeding.[3] *See, e.g., State v. Phillips*, 235 Or App 646, 652, 234 P3d 1030, *modified on recons*, 236 Or App 465, 236 P3d 789 (2010) (" '[C]ounsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be "heard," including the sentencing stage, whether this is wholly performed by the judge or shared with non-judicial persons.' " (quoting *State ex rel Russell v. Jones*, 293 Or 312, 315, 647 P2d 904 (1982))). Closing argument is a critical stage of a criminal proceeding; at that point, legal counsel is trained to craft an effective argument that a defendant may not be able to make. *See United States v. Cronic*, 466 US 648, 659 n 25, 104 S Ct 2039, 80 L Ed 2d 657 (1983) (citing *Herring v. New York*, 422 US 853, 95 S Ct 2550, 45 L Ed 2d 593 (1975), for the proposition that closing argument is a critical stage of a criminal proceeding). *See also State v. Sparklin*, 296 Or 85, 94-95, 672 P2d 1182 (1983) (any time "at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution"); *cf. State v. Lasarte*, 203 Or App 222, 230, 125 P3d 33 (2005) (assuming that, "had [the] defendant been represented by counsel, his closing argument would not have included a confession").

■ A criminal defendant may waive the right to be represented by counsel at critical stages in criminal proceedings, but the waiver must be voluntarily and knowingly made. *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). The "voluntary" component refers to an intentional act that is not induced through coercion. *Id.* at 132-33 n 8. The "knowingly" component refers to a defendant's knowledge and understanding of the right to counsel.[4] *Id.* Here, defendant does not attack the voluntariness of his waiver of counsel, and the record reflects that defendant insisted on presenting his own

---

[3] Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." The Sixth Amendment to the United States Constitution provides, in part, "In all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence."

[4] The "knowingly" component has also been referred to as the "intelligently" component. *See Meyrick*, 313 Or at 132-33 n 8 (observing that appellate courts are "prone to substitute additional adjectives and adverbs in stating rules" such as knowing and intelligent).

closing arguments. Thus, we must determine whether the waiver was made knowingly.

■■■■ To knowingly waive the right to counsel, a defendant must be aware of the right to counsel and also understand the risks inherent in self-representation. *Id.* at 132-33. Although a colloquy on the record is the preferred method of establishing that the waiver was made knowingly, we will also affirm a trial court's acceptance of a defendant's waiver of the right to counsel where, under the totality of the circumstances, the record reflects that the defendant knew of the right to counsel and understood the risks of self-representation. *State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001). Evidence in the record establishing that the defendant had prior experience with the criminal justice system can support a finding that the defendant knowingly waived counsel. *State v. Reynolds*, 224 Or App 411, 419, 198 P3d 432 (2008), *rev den*, 346 Or 158 (2009). Also, a defendant's first-hand experience of "some of the basic things that an attorney could do" provides evidence that a defendant understands the risks of self-representation. *Id.* Finally, a defendant's request for retained counsel supports an inference that the defendant understands the risks of self-representation. *State v. Brown*, 141 Or App 156, 163, 917 P2d 527, *rev den*, 323 Or 691 (1996).

■■■■ Defendant argues that the record in this case does not establish that he understood the risks of self-representation. Specifically, defendant argues that the court informed him "that proceeding *pro se* was 'a bad idea,' but did not say why, and the rest of the record does not reflect that defendant had conversations with other parties informing him of the dangers of proceeding without counsel." The state concedes that the trial court did not engage in the kind of colloquy suggested by *Meyrick*, but it argues that the totality of the circumstances nonetheless shows that defendant understood the right to counsel and risks of self-representation.

We conclude that, under the totality of the circumstances, the record reflects that defendant understood his right to counsel. Defendant has extensive experience with the criminal justice system, including nine convictions, at least one of which went to trial. He obtained counsel. Moreover, defendant had the opportunity to observe Tibbetts's

conduct during this trial, thus experiencing first-hand some of the services an attorney could provide.

Finally, the court specifically warned defendant that proceeding without counsel was "a bad idea" and gave three reasons for its warning. First, the court told defendant that if he proceeded without counsel and misbehaved, he would lose his right to a closing argument. Second, the court warned defendant that if he did not present a closing argument—which would occur if defendant misbehaved as he already had five times during the trial—he was likely to lose his case. Third, the court warned defendant that, in light of the fact that defendant had no legal training, he likely was not aware of the legal contours that he would have to navigate during closing argument. However, the court also proposed a solution to the risk of self-representation by asking Tibbetts to remain as defendant's legal advisor.

Defendant responded to those warnings. First, he explained to the court that he was misbehaving because he was not representing himself. Defendant told the court that he would find it easier to behave if he represented himself. Second, defendant accepted the court's offer to retain Tibbetts as a legal advisor during closing arguments, and Tibbetts remained at the trial to serve as defendant's legal advisor. Accordingly, the trial court was able to tailor some specific warnings to defendant concerning his decision to waive counsel and observe defendant's response to those specific warnings to determine whether defendant knowingly waived his right to counsel. *See Meyrick*, 313 Or at 133 ("The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right."); *id.* at 135 ("In considering and then accepting [the] defendant's waiver of counsel, the court was able to observe and assess his competency and demeanor and his knowledge of the right to counsel."). In view of the totality of the circumstances, we are persuaded that defendant understood the risks of representing himself and knowingly and voluntarily waived his right to counsel for closing argument.

■ ■ Defendant also argues that he did not knowingly waive his right to counsel under the Sixth Amendment. "In determining whether a waiver was knowingly and intelligently made [under the Sixth Amendment], the proper inquiry should focus on the assessment of the defendant's 'knowing exercise of the right to defend himself.'" *Meyrick*, 313 Or at 137 (quoting *Faretta v. California*, 422 US 806, 836, 95 S Ct 2525, 45 L Ed 2d 562 (1975)). Review of a waiver of the right to counsel under the Sixth Amendment requires an examination of the totality of the circumstances. *See Meyrick*, 313 Or at 138 (so reviewing). Defendant does not point to any circumstances that would lead us to reach a different result under the Sixth Amendment than we reached under Article I, section 11. Therefore, having reviewed the totality of the circumstances shown by the record and as recited above, we conclude that defendant knowingly and intelligently waived his Sixth Amendment right to counsel. In light of his past experiences and his experience in the earlier stages of this case, we are convinced that defendant was aware of his right to counsel and of the dangers and disadvantages of self-representation.

In sum, we conclude that the trial court did not err in accepting defendant's waiver of counsel and turn to defendant's assignment of error concerning his lack of representation at sentencing.

■ Defendant argues that the trial court erred in denying his request for counsel at the sentencing hearing because he had merely fired one prior attorney. That denial, according to defendant, was an abuse of discretion under the circumstances. The state responds that the issue defendant raises is properly framed as whether the trial court abused its discretion in denying defendant's request for a continuance, which thereby forced him to proceed without counsel. And, as to that question, the state contends that the trial court did not abuse its discretion given the numerous delays defendant had already requested.[5]

---

[5] In its brief, the state argued that defendant's assignment of error regarding his sentences was moot, because defendant had already served his sentences. However, the state withdrew that contention at oral argument because, in a subsequent case, defendant was sentenced to a 26-month term of incarceration to run

■ ■ We review the trial court's denial of a motion for a continuance to obtain counsel for an abuse of discretion. *State v. Martinez*, 224 Or App 588, 591, 198 P3d 957 (2008), *rev den*, 346 Or 364 (2009); *State v. Hug*, 186 Or App 569, 572, 64 P3d 1173, *rev den*, 335 Or 510 (2003). "When assessing a request for a continuance to obtain new counsel, a trial court must balance a defendant's right to choice of counsel against the need of the public and of all defendants for expedition in the court system." *Id.* at 572-73.

In *Hug*, the defendant argued that the trial court erred in denying her a continuance to obtain substitute counsel. The defendant discharged her second attorney three days before trial, and the defendant's appearance at trial without counsel was consequently a self-generated problem. *Id.* We concluded that the trial court did not abuse its discretion. The defendant had discharged her first attorney two months before her trial date but waited until three days before the trial date to discharge her second attorney. Moreover, we noted that the defendant's second attorney had warned her that, if she fired the second attorney, the trial court might force the defendant to proceed at the trial without representation. *Id.* at 576; *see also Martinez*, 224 Or App at 592-93 (trial court did not abuse its discretion in denying a defendant's motion for a continuance so that the defendant could obtain counsel where he "did not demonstrate that he lacked any opportunity to retain private counsel prior to the day of trial or that he had good cause for his failure to make a *timely* request for a continuance") (emphasis in original)).

Here, defendant originally requested court-appointed counsel, and the court appointed Tibbetts to be his attorney. However, defendant explained to the court before trial that he was trying to obtain funds to hire private counsel through a check he expected to receive. At the April 1 hearing—nearly two months before the May 23 sentencing hearing and two months after the trial—defendant informed the court that he had obtained the check and was considering hiring private

___

consecutively to "any other sentence previously imposed." Accordingly, a reduction in defendant's sentences in this case could result in a shorter sentence on that later case. We agree with the state that defendant's third assignment of error is not moot.

counsel. On April 17, Tibbetts informed the court that defendant had directed him not to appear on defendant's behalf again. Thus, by the time of the May 23 sentencing hearing, defendant had represented to the court that he could hire private counsel and that he did not want his court-appointed counsel. At the sentencing hearing, defendant demanded yet another continuance so that he could be represented at the sentencing hearing.

This case is similar to *Martinez* and *Hug*. Defendant knew of his right to counsel, had demonstrated an ability to request court-appointed counsel, and represented to the court that he had the ability to obtain private counsel. Defendant did not request court-appointed counsel or hire private counsel before the May 23 sentencing date. By that time, more than a month had passed since defendant ordered Tibbetts not to appear at the April 17 hearing. Moreover, nearly four months had passed since defendant's trial on January 30, and the sentencing hearing had been rescheduled five times at defendant's request. Based on those facts, the trial court did not abuse its discretion in denying defendant's motion for a continuance to obtain new counsel on the day scheduled for the sentencing hearing.

Affirmed.