Submitted May 16, affirmed July 17, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
MICHAEL DAVID LUBBERS,
*Defendant-Appellant.*

Lane County Circuit Court
211116406; A149760

306 P3d 791

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant appeals his conviction, following a bench trial, for resisting arrest. Defendant contends that the trial court violated his state and federal constitutional rights to counsel by allowing him to represent himself "when the record did not demonstrate that he understood the nature of the charges and the disadvantages of self-representation." Defendant also challenges the trial court's denial of his motion for a continuance. We reject the latter argument without further discussion. For the reasons set forth below, we also reject defendant's argument that the trial court improperly allowed him to represent himself at trial without first ensuring that he understood his constitutional right to counsel. Accordingly, we affirm.

The pertinent facts are procedural and undisputed. After defendant was charged by information, he was arraigned and counsel was appointed for him. That attorney later moved to withdraw, and the trial court granted the motion. A second attorney was appointed to represent defendant, and that lawyer subsequently gave notice that defendant intended to rely on a defense of "physical force in defense of 'person.'"

On the day set for trial, defendant's counsel informed the court that defendant wished to proceed *pro se* with the lawyer "staying in the courtroom to give him advice on technical matters * * *." The trial court then engaged in a colloquy with defendant, who told the court that he had "studied the law quite a bit over the years[,]" had worked as a legal assistant and private investigator, and was a licensed attorney, although not a member of the Oregon State Bar. Defendant asserted that he specialized "in business contracts," not in criminal defense. Focusing on defendant's acknowledged lack of experience with criminal procedure, the trial court explained that defendant would be better served by retaining his appointed counsel than by proceeding *pro se*:

> "THE COURT: All right. Well, [defendant's then-appointed attorney] has been appointed. [That attorney] has practiced law in this community a long time. He's a very good lawyer. He understands the rules of evidence. He understands court procedures. He is duly admitted in this—and licensed in this state.

"[DEFENDANT]: I would be the first one to admit, your Honor, that I am not, you know, like up to date on the procedural issues in the courtroom for criminal defense especially.

"THE COURT: Well—

"[DEFENDANT]: I would like to be.

"THE COURT: You understand that he's—sounds to me like you're willing to concede that his knowledge of the procedures in Oregon and the rules of evidence is probably superior to yours. He can cite the rules. You probably can't.

"[DEFENDANT]: Yes, sir. And he—

"THE COURT: You understand that you can participate as—as a party here. You can talk to your attorney. If you need to talk to your attorney for a moment before he answers—asks some questions or handles some matter, you can give him that input. * * *

"So you have certainly a right to participate in your defense and an active right. But the difficulty in trying to represent yourself, you're not going to be able to recite what various rules are and understand them and have the—

"[DEFENDANT]: Understood, your Honor. The—the request was that [counsel] to go on being co-counsel for that purpose. That he allow me to be *pro se* to the extent that I can take the lead in the case. I am not—I'm not objecting to anything that he may hold in reserve when it comes to me instructing him as to how I would like to handle my case. * * *"

Ultimately, the trial court granted defendant's request to proceed *pro se,* with defendant's attorney remaining appointed to serve as defendant's "legal advisor." Because defendant had waived his right to a jury trial, the court indicated that it would give defendant "latitude" in allowing him to ask the attorney questions and talk to him "about how to proceed." After discussing additional matters with the parties—including defendant's expressed desire that his lawyer "follow [his] instructions" on all issues—the court again gave defendant an opportunity to choose to be represented during trial:

"THE COURT: * * * I want you, [defendant], to discuss with your attorney outside the presence of the State how

you want to proceed. Do you want him to be the person asking the questions and you talking to him and giving him advice and asking for areas that you want to do?"

The court also suggested that, if defendant chose to proceed *pro se*, he follow any advice that the attorney might give in his role as legal advisor:

"Your attorney * * * has your best interests at heart. He's trying to do this, but he has to follow the rules of evidence. And trying to not follow the rules of evidence is not going to be particularly productive because if I let you proceed, I'm going to keep him appointed to give you some advice, but if you're not going to take his advice, you're not going to be doing yourself any good.

"I want you to be able to present your best position here. And using—utilizing the attorney, especially an attorney with [this attorney's] background and experience about what is admissible and what is not and what is relevant to the actual charges, is going to be very helpful to you in proceeding. You don't—whatever your background is, you've admitted to me, frankly, that you're not a member of the local bar and your experience doesn't involve issues with regard to our precise rules of evidence.

"You probably can't recite what the numbers are or the rules or the statutory citations to aid the Court in making decisions regarding objections or issues with regard to what's relevant and what's not.

"[Defendant's appointed attorney] has a lot of experience in cross-examining witnesses and conducting a defense. He has a significant defense practice and has had for many years.

"So I want you to talk to him about how you want to proceed, and we'll decide that when we get back. I want you to talk to your attorney first and consider what I've said. Willing to do that for me?

"[DEFENDANT]: Of course, your Honor."

After a break, defendant confirmed that he would like to represent himself. The trial court once again recommended that defendant appear through counsel: "[W]hat I'm trying to make it clear to you is I think your case—you'd be well advised to have an attorney represent you instead

of trying to do it yourself. Whatever your training is, I don't think it's in the specifics of Oregon law and criminal procedure to * * * anywhere near the level of [the appointed attorney]." Nonetheless, after defendant made it clear that he wanted "to go *pro se* at this time" if the court allowed the attorney to be present in the courtroom, the court granted his request, explaining that the attorney would remain appointed, but would serve "as a legal advisor in this capacity." Defendant did, indeed, represent himself during the bench trial, and the court convicted him of one count of resisting arrest.

On appeal, defendant first argues that the trial court violated his right to counsel under Article I, section 11, of the Oregon Constitution by allowing him to proceed *pro se* without having ensured that he understood the nature of the right to counsel that he was waiving.[1] That argument implicates *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992), in which the Oregon Supreme Court discussed the circumstances under which a defendant may be deemed to have waived his or her constitutionally guaranteed right to counsel. In *State v. Erb*, 256 Or App 416, 421, 300 P3d 270 (2013), we summarized the pertinent holdings from *Meyrick* and the cases that have followed:

> "Under Article I, section 11, a criminal defendant has the right to be represented by counsel at all critical stages of a criminal proceeding. * * * A defendant may waive the right to be represented by counsel in a criminal proceeding, but the waiver 'must be voluntarily and intelligently made.' 'Voluntarily' refers to the fact that the waiver is an intentional act that is not coerced. 'Intelligently' 'refers to a defendant's *knowledge and understanding* of the right to counsel.'"

(Quoting *Meyrick*, 313 Or at 132; emphasis added in *Erb*; citations omitted). Whether a defendant voluntarily and intelligently waived the right to counsel is a legal question that we answer "in light of the circumstances particular to each case." *Id.* at 420.

---

[1] Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

Here, the parties' arguments focus on whether defendant's waiver was "intelligently" made, that is, whether he adequately understood the right to counsel when he waived it. As we explained in *Erb*, a defendant's understanding of the right to counsel will be deemed "intelligent" only if it encompasses some understanding of the risks of self-representation:

"A defendant is said to understand his or her right to counsel if, considering the 'totality of the circumstances,' the record reflects that he or she 'substantially appreciates the material risks of self-representation in his or her case.' A defendant's understanding of the right to counsel 'means more than merely being generally aware that there may be unspecified risks [to self-representation] but less than knowing all the potential risks.' In other words, it is not required that a defendant 'know and completely appreciate every potential risk of self-representation in his or her case,' but 'a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient.'"

*Id*. at 422 (bracketed material in *Erb*; citations omitted).

To ensure that a defendant has the requisite understanding, a "colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understands" those risks. *Meyrick*, 313 Or at 133. Nonetheless, "Article I, section 11, does not require a catechism by the trial court * * *." *Id*. at 134. Rather, the pertinent question is whether "the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Id*. In that regard, evidence that a defendant "had prior experience with the criminal justice system can support a finding that the defendant knowingly waived counsel." *State v. Easter*, 241 Or App 574, 584, 249 P3d 991 (2011). So can "a defendant's first-hand experience of 'some of the basic things that an attorney could do' * * *." *Id*. (citation omitted).

In this case, the circumstances establish that defendant intelligently waived his right to counsel. Defendant himself acknowledged that, although he professed to have some legal training and experience, he had little knowledge of

courtroom procedures. The trial court emphasized that lack of knowledge, repeatedly explaining to defendant the advantages that an attorney would have in citing and following procedural and evidentiary rules, in understanding what evidence was relevant and admissible, and in cross-examining witnesses and conducting a defense. Defendant acknowledged the court's assessment of his lawyer's superior abilities in those areas. Moreover, defendant's statements to the court indicated that he had other experience with lawyers and the judicial system, as he previously had looked for "attorneys who specialize in police misconduct cases" in Eugene and in Portland, he was able to name one such attorney, he claimed to have won other cases involving "issues of police misconduct," and he asserted that he had made "many, many court appearances" in municipal court on similar charges. In addition, defendant identified another lawyer who had represented him in one of the municipal court cases; indeed, in this case, his defendant waived attorney-client privilege and called that lawyer as a witness to testify to defendant's fear of the police. All of those circumstances strongly indicate that defendant generally understood the benefits of having an attorney and the risks of self-representation and, therefore, that his waiver of his Article I, section 11, right to counsel was intelligently made.

Nonetheless, defendant argues that the trial court's discussion of the risks of self-representation was insufficient because it did not focus on what defendant deems the "special complexity" involved when a defendant who has been charged with resisting arrest intends to raise a claim of self-defense. According to defendant, a person charged with resisting arrest cannot intelligently waive his right to counsel unless he understands the answer to the question posed by the Oregon Supreme Court in *State v. Oliphant*, 347 Or 175, 193, 218 P3d 1281 (2009):

> "A person may not use force to resist arrest, even if the arrest is unlawful, but any person is entitled to use such force as is necessary to overcome what the person reasonably believes to be the unlawful use of physical force by anyone, including a police officer. How can a person obey the statutes prohibiting the use of force to resist arrest and still exercise his right under ORS 161.209 to use force in self-defense?"

"In particular," defendant argues, "unless the defendant understands *Oliphant*, the defendant will be unaware of the pitfall concealed by the intuitively plausible assumption that a person may use force to resist an unlawful arrest."

We reject that argument for two reasons. First, the record establishes that defendant *did* have at least some understanding that his case raised issues of "special complexity." Defendant knew that there are lawyers who specialize in police-misconduct cases, he had considered retaining "more specialized counsel" in this case, and he had been represented by counsel in at least one other case involving a claim of police misconduct. Thus, defendant understood, at least generally, that the type of criminal prosecution he faced raised issues that might implicate a lawyer's specialized expertise. That understanding contributes to the circumstances establishing that defendant intelligently waived his right to counsel.

Second, the Supreme Court has expressly rejected the idea that Article I, section 11, requires "the automatic reversal of a conviction solely because the trial court did not determine that defendant understood the specific elements of the crime of which he was charged and convicted * * *." *Meyrick*, 313 Or at 134. Even in the absence of that information, a defendant's waiver will be deemed valid "if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Id.* If a defendant can validly waive the right to counsel without understanding the specific elements of the crime with which he or she is charged, it follows that a defendant also can validly waive counsel without understanding the contours of all potentially available defenses to that charge—as long as the record otherwise establishes that the waiver is voluntary and intelligent. Here, as we have explained, the record establishes that defendant understood his right to counsel, including some of the specific disadvantages of self-representation, when he voluntarily waived that right. Accordingly, the trial court did not deprive defendant of his Article I, section 11, right to counsel when it allowed him to represent himself at trial.

Defendant also argues that he did not validly waive his right to counsel under the Sixth Amendment to the United States Constitution.[2] He does not, however, posit a federal constitutional analysis that differs meaningfully from the analysis under Article I, section 11. To the contrary, he deems the analyses to be similar. Accordingly, we reject defendant's Sixth Amendment argument for the same reasons we reject his claim that the trial court violated Article I, section 11, when it allowed him to proceed *pro se.*

Affirmed.

---

[2] The Sixth Amendment to the United States Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence."